JOAN B. STEINBRUGGE, PLAINTIFF-RESPONDENT, v. E. DONALD STEINBRUGGE, DEFENDANT-APPELLANT.

Argued March 28, 1949—Decided April 18, 1949.

*Mr. Max M. Albach (Messrs. Ruback & Albach, attorneys)* argued the cause for the appellant.

*Mr. Harry Kalisch (Messrs. Kalisch & Kalisch, attorneys)* argued the cause for the respondent.

The opinion of the court was delivered by

HEHER, J. The appeal is from a decree *nisi* in divorce awarded to the wife for extreme cruelty under *R. S.* 2:50–2. ▮ We find that the proofs do not sustain the decree.

The marriage was celebrated on June 11, 1941, following an elopement. Petitioner had completed her first year at college; and defendant was pursuing the study of the law. There was no announcement of the marriage until August following. Petitioner was then at home with her mother in Milwaukee, Wisconsin. In the ensuing October, petitioner joined her husband in Summit, New Jersey, and there they resided together in a temporary abode for a month or two, and thereafter in a three-room apartment on Woodland Avenue until March 7, 1947, when petitioner left her husband and with their only child, then not quite three years of age, went to Florida, where they remained three months. The petition for divorce was filed on November 14th of that year, shortly after the expiration of the statutory period.

The separation was against the will of the husband. Petitioner said: "I told him his treatment of me had been intolerable, I couldn't stand it any longer; that he had killed every bit of love and respect I ever had for him by his treatment of me, and I refused to stay any longer." She spurned her husband's efforts to terminate the separation. At a conference with her husband and their respective counsel, she again repulsed all endeavors to effect a reconciliation, assigning as reasons that she was no longer in love with her husband because he was "terrible" and "awful hard to get along with," and he had "tricked her into having the child." She was intent on a divorce. She admitted on the witness stand that she "resented" the birth of the child. Her husband "tricked" her, she said.

We are convinced that petitioner's separation from her husband was motivated by considerations which in the view of the law do not constitute extreme cruelty. Six specific acts of cruelty are alleged: the first in the fall of 1942; the last in November, 1946. Meanwhile, they maintained their social contacts as if nothing were amiss. To all outward appearances, they lived together in amity, except for an occasional spat which came to the attention of a neighbor. They visited petitioner's mother at her home in Milwaukee; and in 1945 petitioner followed her husband to his station at Portsmouth, New Hampshire, where he was engaged in work for the Red Cross. They entertained and were entertained together; and together they attended the theater, night clubs and places of recreation and amusement. There was nothing in their mode of life to suggest that the husband practiced the cruelties now alleged. Petitioner was not moved to leave him by fear for her health or safety. She says that on a visit to her mother in Milwaukee, she "considered not returning," but "was assured there would be a change again." But there was no separation in fact until she determined on a divorce. Nothing occurred in the final three months to justify the separation. Indeed, conditions had changed for the better. The husband had discontinued the use of alcoholic liquors; and had by his exemplary conduct shown a disposition to avoid the occasion for disagreements in the future. According to petitioner, the acts of cruelty charged were in most part due to the husband's overindulgence in alcoholic liquor. But she was not entirely without fault in this regard. She, too, used intoxicants, sometimes to excess; and during her husband's period of abstinence, she continued to imbibe liquor in the home and to serve it to their friends. Moreover, she was not prepared for the responsibilities of the marriage state. Her aversion to motherhood undoubtedly contributed to the marital disharmony and discord.

Plainly, the separation was induced by the wife's loss of love and affection for her husband, and not because her husband's conduct had endangered her health or safety or had rendered her life one of such extreme discomfort and

wretchedness as to incapacitate her for the discharge of her marital duties, or there was a fear of such reasonably apprehended. Unless the husband's conduct is within this category, it is not cruelty in the eye of the law. *Pfeiffer v. Pfeiffer,* 1 *N. J.* 55 (1948) ; *MacArthur v. MacArthur,* 135 *N. J. Eq.* 215 (*E. & A.* 1944) ; *Bonardi v. Bonardi,* 113 *N. J. Eq.* 25 (*E. & A.* 1933) ; *Cavileer v. Cavileer,* 94 *N. J. Eq.* 160 (*E. & A.* 1922) ; *Taylor v. Taylor,* 73 *N. J. Eq.* 745 (*E. & A.* 1907) ; *Close v. Close,* 25 *N. J. Eq.* 526 (*E. & A.* 1874). A divorce on this ground is not primarily a punative measure, but a protection of the aggrieved party against future harm.

▮ The separation was not the result of the acts now characterized as cruel. It was the culmination of intermittent discord and an estrangement for which neither was entirely blameless. The husband's conduct during the last three months of their married life together was proof of his repentance for errors of the past and a willingness to avoid the occasion for disagreements in the future. And his behavior after the separation is persuasive proof of his sincerity. But his wife, who had never fully assumed the obligations of the marriage state, was no longer under the tie of love and affection, and she had decided on a divorce. Her former counsel—a lawyer of the highest repute—who testified with his client's consent and under a waiver of the privilege, said that she told him she had "fallen out of love" with her husband; that "he pushed her, at one time he kicked her and called her names, and he drank an awful lot," that these were the only instances of "cruel treatment" which she related to him; and that he advised her she did not have a cause of action for divorce in New Jersey. No doubt, this accounts for the trip to Florida.

The wife's course of conduct militates strongly against her allegations of cruelty. The most persuasive circumstance is her continued residence with her husband until long after the last of the alleged acts of cruelty. She acknowledged at the conference adverted to that she bore the sexual relation to him between the early part of December, 1946, and the separation. And they spent an evening together at a night.club

just before the parting. Her departure was not in fear for her health or safety, but to terminate a marriage that was no longer to her liking. One's actions are more significant than one's words uttered after the event in support of one's cause. The actions are likely to be spontaneous; the words are apt to be a rationalization to suit one's interest for the time being.

■ ■ Moreover, the evidence tended to corroborate but one of the acts of cruelty charged; and this related to a happening which was not sufficient in itself to sustain the decree. It was not of such a nature as reasonably to lead to the apprehension of peril if cohabitation were continued. A divorce may not be had on the unsupported testimony of the complaining party. While there may be corroboration in the circumstances of the particular case, there is none to be found here. As stated, petitioner's behavior is at odds with the charge of cruelty. Compare *Pfeiffer v. Pfeiffer, supra.* Proof of one act of physical cruelty ordinarily does not establish other alleged independent acts of cruelty or a course of conduct constituting extreme cruelty. Corroboration of one is not corroboration of all. If that were not so, proof of one act of cruelty, in itself insufficient to warrant a decree of divorce, would establish all and thus the rule of corroboration would be whittled away.

The decree is reversed.

*For reversal*—Justices CASE, HEHER, BURLING and ACKERSON—4.

*For affirmance*—Justice WACHENFELD—1.