JOSEPH JANUSZEWSKI, PETITIONER-APPELLEE, v. PUBLIC SERVICE COORDINATED TRANSPORT, RESPONDENT-APPELLANT.

Argued February 25, 1952—Decided March 10, 1952.

108

*Mr. Henry J. Sorenson* argued the cause for the appellant (*Mr. Carl T. Freggens,* attorney).

*Mr. Louis C. Jacobson* argued the cause for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J.  From a judgment of the Essex County Court affirming an award made to the petitioner by the Workmen's Compensation Division of the Department of Labor, Public Service took an appeal to the Appellate Division of the Superior Court and we have certified the appeal on our own motion.

On October 10, 1950, the petitioner filed a sworn claim petition with the Workmen's Compensation Division alleging that on October 13, 1948, while driving a Public Service bus he suffered a stroke as the result of "a cerebral accident caused by a highway incident" at Clifton Avenue in Newark. The primary point argued by Public Service on this appeal is that the petitioner failed to sustain the burden of proving that he met with the alleged accident.  Since we consider this point to be dispositive of the appeal, we shall limit our discussion of the facts to those relating to the occurrence of the alleged "highway incident."

At the hearing on the claim petition before the deputy director the sole evidence as to the happening of this incident came from the petitioner himself.  He testified that on October 13, 1948, he was driving a Public Service bus on the Montclair-Newark route.  At the corner of Bloomfield and Clifton Avenues he stopped to pick up three or four passengers.  Having the green light with him he started to cross the intersection when he noticed a small truck crossing in front of him against the light at about 40 miles an hour. As he stepped on the brake to avoid a collision, he "felt like I had a hot flush run right through me and right around me here (indicating the chest and region of the heart)."  He "started to sweat a little bit and I tried to shake this feeling off."  He was "all flustered and nervous" and his heart

"it just kept pounding hard and beating and I was wet with sweat all over." Nevertheless he continued driving the bus and at the next corner stopped again to pick up passengers. It was then that "I started to feel dizzy and faint." "I was taking the money in my right hand and putting the money in my left hand and it was just falling out of the left hand but I didn't think nothing of it." Still he continued driving the bus until he reached the corner of Bloomfield and Park Avenues, when Inspector Murphy of Public Service, noticing the petitioner's bus creeping through a red light on the wrong side of Bloomfield Avenue, boarded it and found the petitioner half sprawled over the steering wheel. Inspector Murphy brought the bus under control and with the aid of another man removed the petitioner from the bus. An ambulance was called and the petitioner was taken to St. Michael's Hospital, where he remained for over two months. On admission to the hospital the petitioner's left side was partially paralyzed and his speech was slurred and indistinct. The final diagnosis was cerebral hemorrhage and hypertensive heart disease. The petitioner's left side has remained paralyzed and he has since been unable to work.

It is undisputed that the petitioner's right to recover is dependent upon the happening of the "highway incident" at Clifton and Bloomfield Avenues, about which the petitioner alone testified at the hearing before the Workmen's Compensation Division. The deputy director, noting the absence of any evidence to the contrary and commenting on the petitioner's forthright demeanor on the witness stand, felt compelled to accept his story as to its occurrence. The County Court, acting on the record below and basing its findings on the opportunity of the deputy director to judge of the petitioner's credibility and on the absence of contradictory testimony, likewise came to the conclusion that the alleged near accident in fact took place. When a finding of fact has been made and concurred in by two separate tribunals below we are naturally reluctant to set it aside and make a different finding, but in the instant case we are constrained to do so.

Even after giving due regard to the determinations below, a careful review of the entire record leads us to the inescapable conclusion that the evidence as to the happening of the near accident at Clifton Avenue does not preponderate in favor of the petitioner. In our opinion the petitioner's own conduct prior to the filing of his claim petition renders his story as to the near accident highly improbable.

The petitioner's testimony at the hearing must be considered in the light of his preceding conduct. Despite the alleged "highway incident" at Clifton Avenue with its alleged immediate and drastic consequences, the petitioner continued to drive his bus. Two passengers on the bus, called as witnesses by Public Service, testified that they noticed nothing unusual either in the operation of the bus or the actions of its driver until they reached Bloomfield and Park Avenues. The St. Michael's Hospital record merely showed that the petitioner was seized "while driving a Public Service bus." The doctor who treated the petitioner at the hospital and for some time after his discharge and to whom, as a matter of course, the petitioner would ordinarily have related in detail the circumstances which brought on his attack, was not called as a witness, thereby leaving the inference that the petitioner never mentioned to him the Clifton Avenue incident. On October 27, 1948, while still hospitalized, the petitioner applied to Public Service for sick benefits to which he would not have been entitled had he met with a compensable accident and as a result of this application the petitioner received payments totalling $540. Also while the petitioner was still in the hospital, his sister went to Mr. Fears of the Public Service welfare office to inquire as to the payment of her brother's hospital bills and was told that it was not a compensation case but one for hospitalization, and the petitioner subsequently received $383.50 from the Hospital Service Plan of New Jersey. In February, 1949, Dr. Pascall at the request of Public Service visited the petitioner at his home for the purpose of making a physical examination. Dr. Pascall testified that in the

presence of the petitioner's sister, the petitioner told him "that he had no unusual strain, untoward incident, or accident of any type" and that the petitioner did not tell him about being cut off by a truck at Clifton Avenue. The petitioner's sister, although she appeared as a witness in his behalf, was not called to refute this testimony of Dr. Pascall. In August and November, 1949, Mr. Lawrence of the Public Service welfare office called on the petitioner with respect to his application for group disability insurance. The petitioner said nothing to Mr. Lawrence about an accident. In January, 1950, Dr. Pascall visited the petitioner a second time in connection with his application for group disability insurance and again the petitioner made no mention of any unusual incident. On September 5, 1950, the petitioner appeared before Referee Burke of the Workmen's Compensation Division at an informal hearing with respect to possible compensation benefits and was interrogated as to whether he had had an accident. The referee's record of the hearing, which was introduced in evidence, states: "No history of accident. Stated he was just driving along in bus when hemorrhage occurred. Petitioner was advised of all his rights and warned about Statute of Limitations." Thus over a period of almost two years following his suffering a cerebral hemorrhage while driving a Public Service bus the petitioner made no mention to anyone of the "highway incident" at Clifton Avenue about which he testified so vividly at the trial and which he claims caused the condition with which he now suffers.

The first indication that Public Service or anyone else had of the alleged near accident was the petitioner's statement in his claim petition, sworn to on October 9, 1950, and filed on October 10, 1950, three days before the expiration of the Statute of Limitations for compensation benefits, to the effect that on October 13, 1948, he suffered a stroke as the result of "a cerebral accident caused by a highway incident" at Clifton Avenue. In these circumstances the inference is present that the "highway incident" was conceived in the

petitioner's mind following his appearance at the informal hearing before the referee where he was no doubt made aware that there had to be an accident in order for him to be entitled to workmen's compensation. This inference is strengthened by the petitioner's own testimony on cross-examination. When asked if he recalled all of the events on Bloomfield Avenue to which he testified, he answered: "I do to a certain extent. I do now because they come back to me as people keep telling me about it." If the people referred to were witnesses to the Clifton Avenue incident and to the subsequent events so that they were able to refresh the petitioner's recollection, they should have been called as witnesses. The present case is similar to *Bouvier v. County Gas Co.*, 134 *N. J. L.* 89 (*Sup. Ct.* 1946), where it was likewise held that the petitioner had failed to sustain the burden of proving the happening of the alleged accident.

Various explanations are offered by the petitioner as to why he made no mention of the Clifton Avenue incident prior to the filing of his claim petition, but we are not impressed by them. In *Steinbrugge v. Steinbrugge,* 2 *N. J.* 77 (1949) we observed that "one's actions are more significant than one's words uttered after the event in support of one's cause. The actions are likely to be spontaneous; the words are apt to be a rationalization to suit one's interest for the time being." In the instant case both the petitioner's actions and his words from the time of his stroke up to the time of the filing of his claim petition three days before the running of the Statute of Limitations, are inconsistent with the happening of a near accident at Clifton Avenue which it is asserted brought on his stroke. After being afflicted the plaintiff did not seek workmen's compensation benefits, but instead applied for and received sick benefits, hospitalization and disability insurance. He told no one of the story he now relates, neither his sister who looked after his affairs, nor the doctors who treated and examined him, nor the welfare agents who assisted him, but instead he denied that anything unusual had happened. After all this, and even after deny-

ing to a referee at an informal hearing that an accident had occurred, the plaintiff now claims that his stroke was brought on by a "highway incident" at Clifton Avenue, an incident of which even the passengers on his bus were unaware. In the light of these circumstances we are firmly convinced that the petitioner's testimony as to the happening of the near accident is not of sufficient weight to support the burden of proof that was his to show by a preponderance of the evidence that the event upon which his claim is predicated in fact occurred. Accordingly, we are compelled to set aside the findings made by the tribunals below and to reverse the determinations there arrived at.

In view of our holding that the petitioner failed in his proof to establish the occurrence of the alleged "highway incident," we find it unnecessary to consider the other questions raised on this appeal as to whether such a near accident, if proven to have taken place, was causally related to his injury and, if so, whether it would have been sufficient under the workmen's compensation statutes to entitle the petitioner to an award.

The judgment appealed from is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT and BURLING—4.

*For affirmance*—Justice WACHENFELD—1.