41 N.J. Super. 187 (1956)
124 A.2d 353
JULIUS AUGUSTIN, PETITIONER-APPELLEE,
v.
BANK BUILDING AND EQUIPMENT CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided July 30, 1956.
*188 Messrs. Emory, Langan, Lamb and Blake (Mr. Paul B. Thompson, appearing), attorneys for respondent-appellant.
Mr. Edward J. Abromson, attorney for the petitioner-appellee.
MASUCCI, J.C.C.
This appeal raises the principal issue that the petitioner failed to sustain the burden of proving that the disability which he claimed to have sustained arose out of and in the course of his employment. Since I conclude that this issue is dispositive of the appeal, I will confine myself to a consideration of the facts relating to the primary question of liability.
On October 21, 1954, while the petitioner was working for the respondent on a platform 20 feet high and in the act of lifting a plank to hand down to a fellow employee, he felt a sharp pain in his spine. He stopped working, rested himself and went down and told one of his superiors "something happened." The same day he went to an orthopedic hospital where he was treated by Dr. Leeds and X-rays were taken. The following day he returned to work, doing what he referred to as light work only. The following week he returned to the orthopedic hospital and was examined by Dr. *189 Smith, the staff doctor, who also examined the X-rays. He then returned to his employment and told the new superintendent that he would not be working the next week because "I have to go to the hospital, there is something wrong with my back." The following week he returned to the same hospital and was put in traction and remained in the hospital one day short of two weeks. Because he was getting bad pains from the spine down to his legs, he was again required to return to the hospital in January A.D. 1955. Myelograms were taken by Dr. White indicating an operation was necessary which was performed on the fourth lumbar disc. As an aftermath of the operation the petitioner required treatment and an operation by Dr. Burpean, an urologist.
The hospital records of the New Jersey Orthopedic Hospital Clinic covering petitioner's treatment and operations were by mutual offer of both petitioner and respondent received in evidence and marked exhibit "P-R-1."
The petitioner was involved in a prior accident in 1934 or 1935 for which he received workmen's compensation of approximately $1,000. As a result of these injuries he felt occasional pains in the back, but he claims that the pains were different from the pains he felt after the incident of October 21, 1954 in that he now felt sharp pains from the back going down his leg, sometimes even causing him to jump in the air from the sharpness of the pain. His pains prior to October 21, 1954 were dull and came for one or two days, then stayed around for three or four months, sometimes a year.
As against the above facts the petitioner frankly admitted that when he went to the Orthopedic Hospital in October 1954 he stated to the doctor that he had pain over the left buttock with left sciatica for three months prior thereto and had twisted his back at the onset. The pain was cramping in nature and there was some sensory loss over the lateral aspect of the left leg. On November 1, 1954, when he was admitted to the hospital and was under the care of Drs. Jarvis Smith and Eugene White, he again told the doctors that about *190 three or four weeks before he began having left buttock pain which radiated through his left thigh and calf to the ankle and that any flexion or motion of the left hip or back increased the pain.
Again the petitioner admits that some ten days after November 1, 1954, accompanied by his daughter, he spoke to Mr. Meyers, the general supervisor, and brought with him a New Jersey sickness benefit card and told him that New Jersey refused to pay him his disability benefits. He admitted that he knew that you can only get disability benefits when you are sick and that you receive compensation benefits when you get hurt on the job, and that he knew the difference between the two. He stated that he failed to get sickness benefits from the State because the respondent had its own private plan. He was referred to respondent and received sickness disability benefits for 26 weeks.
On October 29, 1954 he saw Mr. Meyers, the general supervisor, and told him he would have to go to the hospital because there was something wrong with his back. He did not recall if he told him that he was injured on the job either at that time or when he applied for sickness disability benefits.
Petitioner further admitted telling Dr. Ehrlich that for two days prior to the incident he had back pains.
In exhibit "R2" signed by the petitioner in answer to question No. 9, "Describe your disability and state how and where it occurred," he replied "At home." In answer to question No. 17, "Nature and cause of this disability which prevents claimant from working," he stated, "Degenerate  disk L5, S1  left," and question 18, "Do you think this is a Workmen's Compensation case?" was answered by the petitioner placing a cross over the block containing the word "No."
When the petitioner was asked to explain his answer to No. 9 above, he stated in court, "That is the time I felt the pain, at home, severe pains."
After admitting that he knew the accident had happened on the job on October 21, 1954 the petitioner was asked *191 why he had stated it was at home, and he answered, "I don't know."
After some leading and suggestive questions by his counsel he stated that it was at the suggestion of the union's business agent because he was told he would get more from the carpenter's welfare fund than from the State.
Dr. Philip Willner, accepting the petitioner's claimed symptoms, including his subjective symptoms of October 21, 1954, found that the incident on this date was causally related to the petitioner's condition and aggravated his disability.
Dr. Ehrlich gave his opinion that with petitioner's history of suffering from a back disc extending for a period of many years, 10, 15 or 20 years, but never becoming acute, the disc could slip and become herniated into an acute stage without any incident at all as far as working was concerned.
Dr. Willner said that a normal degeneration could possibly bring about the same condition.
Dr. White, who operated on the petitioner at the Orthopedic Hospital, agreed with Dr. Willner as to the causal relationship between the incident of October 21, 1954 and the petitioner's aggravation of his back condition. However, again the history under which the petitioner was treated by Dr. White and his certificate state among other things that the petitioner "was suffering from a degenerated intervertebral disc, L-5 and S-1 left" and that he did not think this was a workmen's compensation case. His attempted explanation is very weak and is not persuasive, nor does it satisfactorily explain away the gross contradiction.
It is urged by the petitioner that this court must give due regard to the opportunity of the deputy director to judge the credibility of the witnesses. Gagliano v. Botany Worsted Mills, 13 N.J. Super. 1 (App. Div. 1951).
Due consideration must be given to the deputy director's opportunity to judge the credibility of the witnesses but it is still the duty of this court, under the authority of R.S. 34:15-66, to consider the appeal as a trial de novo on the transcript of the record and testimony, and to make *192 its own findings of facts and conclusions of law. Gaeta v. Scott Paper Co., 14 N.J. Super. 261 (App. Div. 1951). Gagliano v. Botany Worsted Mills, supra, cited by petitioner, is not to the contrary. It specifically held that the County Court in the performance of its duty must "bring a new mind for the consideration of the transcript of the record and testimony in the cause."
It is clearly the duty of this court to duly consider the important advantage of the deputy director in judging the credibility of the witnesses, to study and analyze the record and testimony, and then to make its own independent findings of facts and conclusions of law.
Unquestionably the burden is upon the petitioner to prove by the greater weight of the credible evidence that the petitioner's condition was caused by an accident which arose out of and in the course of his employment with the respondent. Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 533 (Sup. Ct. 1939).
Has the petitioner sustained the required burden of proof by the greater weight of the credible evidence? The petitioner is the key witness on the most important issue as to whether the petitioner on October 21, 1954 suffered an accident which caused the condition complained of or an aggravation of a prior dormant condition.
His testimony must be considered in the light of his previous conduct and statements to test its credibility.
The petitioner did testify that he felt a sharp pain after lifting several planks and that he told his superior something happened, he had hurt his back.
As against this testimony we must consider his prior actions and statements.
Immediately after the alleged incident on October 21, 1954 he sought his own personal medical care and treatment without resort to any medical assistance required to be furnished by his employer or its insurance carrier if the injury was the result of an accident arising out of and in the course of his employment.
*193 At that time he stated to the doctor at the Orthopedic Hospital that he had pain over the left sciatica some three months prior thereto.
The history appearing in the New Jersey Orthopedic Hospital Clinic states that he "had recurrent back of a few days duration for 10 years or more. About 3 or 4 wks. ago he began having left buttock pain which radiated into his left thigh and calf to the ankle. Any flexion motion or l. hip or back increased the pain as did coughing etc." This history was given on November 1, 1954, about 10 or 11 days after the alleged incident.
In exhibit "R2" in evidence, the petitioner stated that his disability occurred at home. Dr. White, one of petitioner's treating and operating physicians and a witness for petitioner, stated in the same exhibit "R2" that the cause of petitioner's disability was "degenerate" and that he did not think that this was a workmen's compensation case.
Lastly he applied for and accepted 26 weeks' sickness disability benefits which he was admittedly not entitled to if his present contentions are correct.
The petitioner gives no explanation for his prior contradictory statements and actions. His attempted explanation that he had a conversation with his union business agent and that as a result he "went and got sickness benefits application," far from explaining his action, additionally emphasize his prior inconsistent position.
Petitioner cites the case of Wright v. Westinghouse Electric & Mfg. Co., 134 N.J.L. 581 (Sup. Ct. 1946), affirmed 135 N.J.L. 460 (E. & A. 1947), in which our then Supreme Court, affirmed an award even though the petitioner had applied for sick benefits because he paid little attention to what he signed since he had to have money. Justice Bodine stated "Persons of limited means and education frequently so act."
However, in the instant case, the petitioner before making the application gave it full consideration and attention. He consulted his union business agent, he laid the preliminary ground work for his application by the history he gave to *194 the doctors and at the hospital he filled out the application and even had his doctor make a statement therein that petitioner's disability was not compensable under the Workmen's Compensation Act. He affirmatively testified that he knew the difference between sickness disability benefits and workmen's compensation benefits, that he was educated and had graduated from high school in Europe. It is clearly apparent that there is a vast difference between the instant and the cited cases.
The petitioner has the burden of proving, by a preponderance of the credible evidence all the necessary elements to prove a compensable injury. Roberts v. Beitler, 34 N.J. Super. 470 (Cty. Ct. 1955).
The petitioner's whole case depends upon his credibility. The testimony of the petitioner's witnesses merely corroborated the incident. They, of course, could not and did not attempt to support petitioner's contention that the incident was the onset of petitioner's injury and disability.
The factual situation in the instant case is substantially similar to the cases of Bouvier v. County Gas Co., 134 N.J.L. 89 (Sup. Ct. 1946) and Januszewski v. Public Service Coordinated Transport, 9 N.J. 107 (1952).
In the cited cases the credibility of the petitioner as affected by his prior inconsistent actions and statements was in question.
In the latter cause, Vanderbilt, C.J. quoting Steinbrugge v. Steinbrugge, 2 N.J. 77 (1949) stated "One's actions are more significant than one's words uttered after the event in support of one's cause. The actions are likely to be spontaneous; the words are apt to be a rationalization to suit one's interest for the time being."
In the instant case, both the petitioner's actions and his words are inconsistent with the present claim. In view of the circumstances related the petitioner either willfully and falsely made inconsistent prior statements or falsely testified in the instant case. In either circumstance, he has placed himself in a position that his testimony does not carry sufficient weight to meet the required burden of proof.
*195 It is true that the petitioner produced Drs. Willner and White in support of a causal connection between the stated incident and his disability. It must be borne in mind that such conclusions were predicated upon the hypothesis which included the fact that the petitioner had suffered an accident on October 21, 1954 which arose out of and in the course of his employment with the respondent which this court does not find.
In view of this court's finding that the petitioner has failed to sustain the burden of proof, it becomes unnecessary to consider the Bureau's allowances for medical expenses.
The petition will, therefore, be dismissed.