44 N.J. Super. 242 (1957)
130 A.2d 70
JULIUS AUGUSTIN, PETITIONER-APPELLANT,
v.
BANK BUILDING AND EQUIPMENT CORPORATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1957.
Decided March 21, 1957.
*243 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Edward J. Abromson argued the cause for appellant.
Mr. Paul B. Thompson argued the cause for respondent (Messrs. Emory, Langan, Lamb & Blake, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
Petitioner, Julius Augustin, was granted an award by the Division of Workmen's Compensation on account of a back disability adjudged to have resulted from an accident arising out of and in the course of his employment. The County Court reversed holding that such an accident had not been proved. 41 N.J. Super. 187 (Cty. Ct. 1956). The diverse judgments in the two tribunals resulted from differing views as to Augustin's credibility.
A first and guiding principle in our review of these cases is that great weight must be given to the judgment of the County Court. Although the authority to make independent findings of fact cannot be doubted, we do not exercise it unless from our study of the record the interests of justice plainly call for a reversal. Jensen v. Wilhelms *244 Construction Co., 18 N.J. Super. 372 (App. Div. 1952); Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258 (App. Div. 1950); R.R. 1:5-4(b).
The basis of Augustin's claim for compensation is that on October 21, 1954, while working for his employer, Bank Building and Equipment Corporation, as a carpenter he injured his back. More particularly, he says that while lifting a plank weighing 70 or 80 pounds he felt a sharp pain in his spine. He rested a while; around noon he told the foreman that "something happened, I hurt my back," and that he was going to the hospital. After looking unsuccessfully for the superintendent, he drove to the hospital. At that time he had worked for the respondent since September 29, 1954. Prior thereto he had been employed by another construction company off and on for a number of years, the last period ending September 1, 1954.
Augustin was 68 years of age when the hearing took place. The record reveals him to be an intelligent, articulate and perceptive man. He had graduated from high school in Europe and had studied architecture in this country. He was on the witness stand before the doctors and he exhibited an easy familiarity with many medical terms which were relevant to his physical condition and its treatment. Moreover, he was aware of the difference between workmen's compensation claims and claims for sickness benefits and the basis for recovery in each case. In fact, in 1934 or 1935 he had sustained a back injury while working for another employer and had recovered workmen's compensation for it. Since then his back had bothered him off and on; "[i]t came first one or two days, then it stayed around for three or four months, sometimes a year." In 1939 he made another recovery of workmen's compensation for a head injury received while working at the World Fair; in 1930 or 1933 he was struck by a trolley car and hospitalized. At this time he was treated for a stomach injury and his appendix was removed.
It was with this background of experience that he selected and drove himself to the New Jersey Orthopedic Hospital *245 in Orange. On arrival, in spite of the fact (as he now claims) that he had just injured his back at work, he gave this history:
"Pain over left buttock with left sciatica for three months. Twisted his back at onset * * *."
X-rays taken that day demonstrate that he had back pathology of long standing. There was "marked osteoarthritic lipping of the lumbar vertebral bodies especially [at the second and third lumbar vertebrae]. * * * The sacroiliac joint spaces [were] partially obliterated by degenerative arthritic changes." Apparently he was referred to the back clinic.
Work was resumed the next day. It was described as light work and was continued until November when he was admitted to the hospital. Prior thereto he had visited the back clinic on October 27; the record notes that he showed "numerous changes in his low back," and "in view of the persistence of symptoms he should be admitted for traction, physio, etc."
On the November 1 admission, part of the history noted in quotes is "Pain in my left buttock, thigh and calf of many years duration." The personal history then continues:
"This patient is employed as a carpenter and has had recurrent back pain of a few days duration for 10 years or more. About 3 or 4 weeks ago he began having left buttock pain which radiated into his left thigh and calf to the ankle. Any flexion motion of the left hip or back increased the pain as did coughing. Lying flat in bed and heat relieved the pain. He has had an occasional limp on the left."
Examination also showed some slight atrophy of the left thigh and calf. At this time the impression of the examining physician was that the patient was suffering from a herniated intervertebral disc between the fourth and fifth lumbar vertebrae.
At no time did Augustin make any reference at the hospital to an employment accident although there were references to his work. Also, on October 31, his last work day before the hospitalization, he told the foreman that he would not *246 be back because there was something wrong with his back and he had to go to the hospital.
On November 1, obviously immediately upon his entry to the hospital, he executed an application for sickness benefits to be paid by the State of New Jersey. Question 9 of this form is as follows:
"Describe your disability and state HOW and WHERE it occurred:"
His answer was: "at home."
Then question 11, which is marked "Workmen's Compensation," says:
"If this disability arose out of and in the course of your employment have you filed or do you intend to file a claim for workmen's compensation?"
He answered in the negative. At the hearing he said the sickness claim was made on the advice of his union agent.
A medical certificate form appears at the bottom of this application. It was completed on November 12 by Dr. E.A. White, one of the physicians attending him at the hospital. The doctor described the condition under treatment as a "degenerated" intervertebral disc "L5-S1 left." And in answer to the question: "Do you think this is a Workmen's Compensation case?," he answered "No."
During this period of hospitalization which lasted until November 12, Augustin was placed in traction. On the date of discharge, Dr. White noted: "Complete relief of symptoms on conservative therapy. Discharged wearing garment. Final diagnosis: Probable herniated intervertebral disc, L4-L5, left."
Although the record is not entirely clear as to just when the action occurred, it does appear that the State declined to pay sickness benefits for which the application had been made, advising him that his employer had provided such benefits under a private plan. So he returned to the respondent's place of work and told the superintendent that *247 he wished to apply for these benefits. Subsequently they were paid for a period of 26 weeks.
On January 3, 1955 petitioner was readmitted to the hospital. This time his history was a little different. He said he "started having pain in his low back last October." But there was still no reference to an employment incident nor any suggestion that the onset of the pain was at work rather than at home, although he said again that he "works as a carpenter." Myelograms were taken which revealed a herniated disc between the fourth and fifth lumbar vertebrae. Operation followed for excision of the disc. On January 24 he was transferred to the Orange Memorial Hospital because some prostate trouble had developed. When this was taken care of, he was released on February 17. Thereafter he received physiotherapy treatments at the orthopedic clinic at least until April 1955. He returned to work for a construction company on April 21 and worked there for "a couple of months." The petition for workmen's compensation was sworn to on May 4. At the time of hearing, he had qualified for and was receiving social security.
Medical proof was introduced by petitioner to establish that the disc condition was causally related to the employment. The assertion of causal connection by petitioner's physicians was predicated upon an acceptance by them of the happening of the plank lifting episode. On that hypothesis they advanced the conclusion that the herniation of the disc was either produced or aggravated thereby. In this connection it may be noted that one of the experts for this thesis placed considerable emphasis upon his assumption that after the alleged October 21 incident the pain began to run all the way down his left leg. He said the "chances" are that "some form of trauma took place somewhere at the time when he got the pain going down his leg and it coming (sic) clear down his leg," and he indicated that when this further rupture or final rent of the disc occurred, sharp pain would arise which pain would increase thereafter because the pressure on the nerve root would take time until it reached its maximum. This assumption overlooks *248 the fact that on October 27 the patient had some atrophy of the left thigh and calf, and that on November 1 he told the hospital doctor that "[a]bout 3 or 4 weeks ago he began having left buttock pain which radiated into his left thigh and calf to the ankle." Obviously this was before the alleged accident. The doctor conceded that the patient "could have traumatized himself at work or traumatized himself going (sic) home."
Respondent's medical expert expressed the view that petitioner's condition resulted from the natural progress of his pre-existing back condition. In his experience "one typical thing of patients with herniated discs is that they complain of recurrent lumbago before" and he said that what Augustin called lumbago before the alleged October 21 incident was the beginning of root irritation. He said also that if a man has a protruding disc "anything that he does in active life like stepping off a step" or lifting a 70 pound plank could aggravate it.
From this factual outline, it is apparent that the fulcrum on which the case rests is the reality of the plank lifting episode and the petitioner's assertions on the witness stand about his back condition before and immediately after it allegedly happened. And the reality of those factors in turn depends upon his credibility. The Deputy Director believed him apparently because of the corroboration offered by a fellow worker. After a full study of the proof, the County Court declared that Augustin's statements and conduct were so inconsistent with the existence of a known employment episode which produced the disability as to warrant the conclusion of failure to carry the burden of proof.
That the record contains adequate evidence to sustain the position of the County Court cannot be doubted. This employee not only had experience with previous workmen's compensation claims but he was intelligent and alert and aware of the basis for recovery in such cases as distinguished from sickness benefit claims. And his actions and assertions after the alleged accident as to his physical condition prior thereto, the cause thereof and when and where it arose, all *249 point in the direction he chose to follow, namely, the collection of sickness benefits. Not only did he pursue that choice of benefits but quite obviously he stayed with it until the benefit period of 26 weeks had run or was about to run its course. Then he sought workmen's compensation. Moreover, he offered no explanation of any substance for the history he gave in the hospital record, for his failure immediately to report the particular plank lifting incident to his superiors, for his statement that the acute disability arose at home and that he twisted his back at the onset, for his deliberate assertion in the application for sickness benefits as to "HOW and WHERE" it occurred or for his statement that he had not filed and did not intend to file a claim for workmen's compensation. In the last respect he cannot be treated as an uninformed workman who may not have fully appreciated the chosen course, a distinguishing feature of Wright v. Westinghouse Electric & Mfg. Co., 134 N.J.L. 581 (Sup. Ct. 1946), affirmed 135 N.J.L. 460 (E. & A. 1947). He conceded that when completing the application, he knew what the requirements were for a workmen's compensation claim. As Justice Heher said in Steinbrugge v. Steinbrugge, 2 N.J. 77, 82 (1949):
"One's actions are more significant than one's words * * *. The actions are likely to be spontaneous; the words are apt to be a rationalization to suit one's interest for the time being."
Here both the ante litem motam words and conduct were at odds with the existence of a compensable employment accident.
The County Court did not attach the same probative force to the alleged corroboration of the fellow worker as did the Deputy Director. Study of his testimony does not leave a favorable impression of him. He was a member of the same union as Augustin, who had held his membership therein for 50 years; they had been hired on this job at the same time and worked together. And his stilted testimonial assertions are those of a person overly avid and eager to be helpful.
*250 Our review of the entire evidence leaves us convinced that the County Court's view of petitioner's credibility and his finding of lack of adequate believable testimony that a compensable accident had been sustained, is not without substantial support. And we cannot say that the ends of justice require a reversal. Our awareness of the beneficent social purpose of compensation for workmen who suffer injuries arising out of and in the course of their employment and our desire to effectuate that purpose, cannot add probative force to evidence which lacks credibility. Such is the situation here. Januszewski v. Public Service Coordinated Transp., 9 N.J. 107 (1952); Jensen v. Wilhelms Construction Co., supra; Bouvier v. County Gas Co., 134 N.J.L. 89 (Sup. Ct. 1946).
Affirmed.