47 N.J. Super. 90 (1957)
135 A.2d 339
JOSEPHINE RICCIARDI, PETITIONER-RESPONDENT,
v.
MARCALUS MANUFACTURING COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1957.
Decided October 21, 1957.
*92 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Edward B. Meredith argued the cause for respondent-appellant.
Mr. Isadore Rosenbloom argued the cause for petitioner-respondent (Messrs. Marcus & Levy, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Respondent appeals from a judgment of the Passaic County Court affirming an award for temporary and permanent disability in the Division of Workmen's Compensation in favor of petitioner. The theory of the claim, as stated by counsel for petitioner during the hearing before the Division, is that there was an "aggravation" of a "pre-existing carcinoma," or cancer, in her left breast as a result of being struck while at work by a falling ten-pound carton on December 11, 1953. Three days later, according to her testimony, petitioner noticed a lump in her breast at the point of injury, and the entire breast was removed surgically on March 12, 1954. Respondent's position is that the blow from the carton had no aggravating effect on the cancer or upon the plaintiff's disability and that the incident, far from adversely affecting petitioner's prognosis, has improved it by leading to discovery of the lump and earlier surgical therapy.
A proper discharge of our appellate function in this case has required close scrutiny of the proofs as well as the rulings in the Division and the County Court.
Petitioner, aged 46, was engaged as a packer when she was struck on the date indicated by a carton of wax paper which had fallen two feet. The resulting pain was severe enough to prevent her from continuing her work for the *93 next five minutes. Several minutes later, in the ladies' room, she noticed a red bruise where the carton had hit her. She showed this bruise to two co-workers. Two days later she noticed discoloration taking place (black and blue), and this was corroborated by the co-workers. The next evening, three days after the accident, she first noticed the appearance of a "lump" in that area of her breast about the size of "the tip of my pinky." The following day, the 15th, she went to the plant physician, Dr. Bongiorno, who diagnosed her ailment as hematoma (hemorrhage of the tissues) and recommended application of heat. The doctor testified that the breast was not then black and blue but that petitioner said it had been the week before. He described the lump in her breast as "a nodule and hard and irregular." He was "suspicious of a growth" when he saw it. Petitioner saw her family doctor, Dr. Curtis, that night, who likewise recommended heat treatment. She then went to a Dr. Gallo, who told her the lump would have to come out. Neither of those doctors was called as a witness. She then went back to Dr. Curtis, who recommended Dr. Bender, a surgeon. She saw Dr. Bender in March 1954, and on March 12 he performed a radical "mastectomy," or removal of the left breast and surrounding muscles, glands and tissues. The growth was diagnosed as cancerous.
Medical examination of the petitioner indicated that she was in generally good physical condition by the time of the hearing in May 1956 and had been back at her job doing lighter work since August 1954. No doctor who testified in this case found direct evidence of any existing metastasis (spread) of the cancer in petitioner's body, although it is clear from the proofs that it is nevertheless possible in this, as in any case of breast cancer, that unobserved dispersal of cancer cells did occur prior to surgery and may become manifest in the future. Only time can tell. There was also apparent unanimity of medical opinion that whether or not petitioner had experienced the accident here involved, early surgical removal of the breast would have been indicated as the appropriate treatment.
*94 Before proceeding to a detailed consideration of the expert opinions offered in this case as to the causal relationship between the accident and petitioner's condition, it will be helpful to formulate the precise factual issues posed for resolution. Only in that manner can we logically assay the proofs against the rules as to sufficiency of factual support for the first instance rulings which govern this court on the present review. The approach taken by petitioner's experts, or at least of one or the other of them, suggests that the "aggravation" of the pre-existing cancer is postulated upon the occurrence of trauma to the cancerous tumor, leading, in turn, (a) to a more rapid enlargement of the tumor than would have otherwise occurred, and (b) to the probability of dissemination of the cancer cells, and, therefore, to a more unfavorable prognosis for the plaintiff in terms of the likelihood of metastasis. In reference to the first of these hypotheses, if considered as unrelated to the second, it may appear questionable, in terms of the theory of compensation recovery as based upon disability or death arising from accident, N.J.S.A. 34:15-12, 13, that a faster rate of tumor growth should be relevant to the right of recovery, where, as here, there is no dispute but that removal forthwith of the entire breast, with such impairment or disability as would have attended such surgery, would have been required even if the supposed trauma had never taken place. We are satisfied, however, that the controlling decisions pertinent to this question, though not directly in point, require the conclusion that if, in fact, the accident caused this tumor to grow faster than it would have otherwise, there must be recovery for all of the disability incidents of the disease notwithstanding that such increased rate of growth did not have anything to do with the medical decision to operate beyond making the necessity to do so manifest earlier than otherwise. See Welch v. County of Essex, 6 N.J. Super. 422 (Essex Co. Ct. 1949), affirmed 6 N.J. Super. 184 (App. Div. 1950); Kling v. Central Lumber & Millwork Co., 3 N.J. Super. 151 (App. Div. 1949); Russo v. Wright Aeronautical Corp., 1 N.J. 417 *95 (1949). See also 1 Larson, Workmen's Compensation Law (1952), § 12.20, p. 172, n. 84.
As to the second branch of the hypothesized aggravation, the worsened prognosis, we reserve comment until the discussion of the evidence on the point, infra.
The testimony concerning the alleged increase in size of the lump in petitioner's breast between the dates of the accident and the operation may be summarized as follows. Petitioner herself testified that during that period the lump "was getting bigger and bigger"; on cross-examination, that it doubled in size. Two co-workers testified that it got larger. One said, "much larger." Dr. Bongiorno testified that on the occasion of his examination in December 1954 the lump was "about a centimeter or a half inch." (A centimeter is about 2/5 inch.) Dr. Bender, the surgeon, found it to be "about 1 centimeter in diameter" upon his pre-operative examination March 11, 1954. His report as to the operative record gave the size of the mass as "about 1 1/2 cms. x 1 cm."
On the basis of a hypothetical question, with premises inclusive of the lay witnesses' estimates of the growth of the lump, as to whether there was a connection by way of "causation, aggravation or acceleration" between the accident and "the condition" of the petitioner, the first response of Dr. Bender as a witness for petitioner was that "a factor of trauma or injury might cause an acceleration of an unkind [malignant] process." On further questioning he said, "As far as we know, on the evidence you present to me in the form of this question, * * * this was an aggravation of a presumed existing condition." In explanation of his answer he expressly predicated it upon an injury to the cancer cells, which would project such cells, or cell groups, into the tissues beyond the area of the growth itself. As noted above, however, no clinical evidence as to such projection and dissemination of cancer cells appears in the case, and microscopic examination of the breast and the lymph nodes after the surgery was negative as to such spread, as testified to by Dr. Yaguda for respondent, and *96 conceded by Drs. Friedman and Bender for petitioner. As to the direct evidence concerning trauma to the tumor, see infra.
Dr. Bender conceded on cross-examination, as noted, that there was no evidence, when he examined petitioner, of metastatic extension nor of "injury" to the tumor. He also answered in the affirmative the question as to whether he would expect a tumor of this type to increase in size from the "tip of your pinky" to 1 x 1 1/2 centimeters (aside from trauma). He further testified, on cross-examination:
"Q. Now, in this particular case is there any evidence either in the pathologic report or in your observations during surgery, that this woman's cancer was, in fact, aggravated by trauma? A. That would be a very, very difficult thing to say. If you want a positive answer, I would say no.
Mr. Meredith: That is all, Doctor, thank you.
The Witness: There is no direct evidence that that occurred."
Immediately thereafter, on redirect examination, he testified:
"Q. Doctor, in the realm of reasonable probability, as you stated, this direct trauma did probably aggravate a previous process, or previously existing process; is that correct? A. If the process existed as the history in my case is of three month duration and would date back to the time of the evident lump and you had your injury, then the presumptive attitude would be that it was aggravated by the trauma."
There was considerable controversy at the hearing as to whether there was any clinical evidence of injury, or trauma, to the tumor itself, as distinguished from the breast generally. The theory in support of the affirmative on this proposition was that offered by Dr. Milton Friedman, an outstandingly qualified authority in the cancer field. From the testimony of the petitioner and her corroborating witnesses that the black and blue marks (ecchymosis) on the breast did not appear until two days after the accident, he concluded that the ecchymosis was evidence of traumatic rupture of the blood vessels in the cancer, which was imbedded deeply enough for the resulting hemorrhage to require two days to seep to the surface of the skin, whereas had the ecchymosis *97 derived from rupture of blood vessels in the healthy tissue near the skin it would have been apparent at once. Countering this theory, which depended on the resolution in petitioner's favor of the factual dispute between petitioner and Dr. Bongiorno as to when the black and blue marks appeared, was the testimony of Dr. Yaguda that microscopic examination of the tumor specimen showed no hemosiderin, or blood pigment, which would have been present had there been any hemorrhage in the tumor during the previous six or seven months. While Dr. Friedman had not examined the microscopic slides, he conceded the hospital records supported Dr. Yaguda's testimony as to what they showed in this respect. Dr. Yaguda ventured the opinion that if the lay witnesses saw black and blue marks, these might have been blue dome cysts which are found in chronic cystic mastitis, which he testified was present throughout petitioner's breast tissue. Dr. Hoffman, a cancer expert who testified for respondent, said the extravasation of one or two drops of blood might produce a black and blue mark the size of a 50-cent piece and that therefore the marks observed by the lay witnesses for petitioner did not necessarily indicate hemorrhage of the tumor.
Dr. Friedman was petitioner's principal expert witness. Proceeding on the basis of petitioner's testimony that she had not noticed the lump prior to the accident, that her previous health was normal, the testimony as to how the injury had occurred and the appearance of the ecchymosis referred to above, he deduced that there was trauma to the tumor and "this traumatized tumor rapidly enlarged so that three days after the trauma a definite lump was felt for the first time." He concluded that prior to the accident the patient had "an early, minute undetectible carcinoma * * * which was traumatized by an accident causing hemorrhage and progressively rapid enlargement of this cancer. This feature deleteriously affected the tumor so that her prognosis is now worse than if that cancer had not been traumatized."
Dr. Friedman testified that the observed rate of growth of the tumor was "slightly" greater than what he would *98 expect of such a tumor were it not traumatized. This conclusion must be acknowledged to be weakened by its foundation in the observations of lay witnesses and the witness' own disparagement of the reliability of estimates from palpation by lay (or even expert) observers as to the rate of growth of breast tumors.
On the same subject, the examining pathologist, Dr. Yaguda, testified that the specimen sections indicated that there was no rapid growth of the tumor because "there were not many mitotic figures, the nuclei are of about the same size and have a single nucleolus." He said, "That is not the picture of a rapidly growing tumor." Dr. Hoffman, with great experience in the cancer field, testified that this was a "low grade, slowly growing type of cancer." It had probably been in the breast more than a year before its discovery.
Dr. Ruoff and Dr. Hoffman both testified that trauma does not typically aggravate or accelerate a cancerous growth. Dr. Hoffman gave it as his opinion that direct trauma to a cancer destroys cancer cells and stops cellular division.
We pass to the evidence in support of the other basis for petitioner's predication of aggravation  the worsened prognosis. We have already made it clear that there was no evidence of metastasis at the time of the hearing, two years after the surgery. Dr. Friedman testified that, in general, a woman with a cancerous lump in the breast has a "thirty to forty chance" of having metastasis elsewhere in her body within five to ten years. He testified that petitioner had a "slightly [higher?] (sic) percentage of having metastasis elsewhere," because her lump was in the inner quadrant of the breast (a position from which extension of cancer is more likely to be undetected) and that the fact of trauma to the lump meant "she has a still higher probability of having metastasis in her body which can show up within the next five to ten years."
We know of no authority to support a recovery in workmen's compensation for the contingency of future appearance of a disease which does not appear from any of *99 the clinical evidence to be presently existent in the body. In other words, if there were no prior objective manifestation of disease in the body, we doubt that an allowance of compensation could be predicated upon medical testimony that there was a possibility, or even probability, that trauma sustained by a bodily member would at some indeterminate future date eventuate in disease. In the present case, however, the worsened prognosis, while not of itself a basis for recovery, was advanced nevertheless as a companion result, along with the increased rate of tumor growth, of the traumatization of the tumor, and thus lends color and substance to Dr. Friedman's hypothesis that the increased rate of tumor growth is medically an aggravation of petitioner's condition.
The "Findings and Conclusions" of the Deputy Director in the Division of Workmen's Compensation are of no help in the resolution of the appeal. Aside from collating the proofs, there is only the finding that "the amputation of the breast was occasioned by the blow and consequences thereof by the box to the breast." This particular finding is justified by none of the evidence in the case, except in the sense that the accident alerted petitioner and her physicians at an earlier date than would otherwise have occurred to the existence of the lump. The medical opinion is unanimous to the effect that surgery of this condition would have been necessary even if there were no accident. There are no findings as to whether there was actually trauma to the tumor itself, and, if so, whether such trauma aggravated the pre-existing disease. Only by the rendition of such findings could we appraise and adjudge the merits of the Division's ultimate conclusion for recovery. Folsom v. Magna Manufacturing Co., 14 N.J. Super. 363, 369-370 (App. Div. 1951).
The County Court reviewed the testimony and concluded:
"* * * the trauma received by the petitioner on December 11, 1953 produced a condition within petitioner's breast that was changed from its previous state and that the trauma aggravated *100 the existing carcinoma by acceleration of the growth and the dissemination of cancer cells within her breast."
It would have been helpful if the court had made a specific finding as to whether the blow to the breast had produced a trauma to the tumor, as distinguished from the breast tissue generally. This was a sharply contested issue and the clinical evidence to the contrary offered by respondent was not dependent upon the acceptance of controverted lay testimony concerning the timing of the ecchymosis, as was that of the supporting conclusion of Dr. Friedman. This was additionally important because the conclusion of aggravation by Dr. Bender was totally dependent upon a hypothesis of "injury," in the sense of trauma, to the tumor, as to which the witness offered no independent opinion of his own. Nevertheless we think a finding of trauma to the tumor is clearly implicit in the remainder of the court's stated conclusions and accept the ruling as so finding.
We are not in accord with some parts of the reasoning of the County Court. For example, the "physiological change in petitioner's condition" and "her rapid physical deterioration" following the accident, to which the court gives considerable significance, were manifestations substantially to be expected, even according to both of petitioner's expert witnesses, whether or not she had sustained trauma to the tumor. However, there was some proof, not insubstantial in nature, that there was trauma to the tumor, and, assuming that fact, the opinions of witnesses of the stature in this field of Dr. Bender and Dr. Friedman that there was consequently an increased rate of growth of the tumor, even if slight, and probable dissemination of cancer cells, are not lightly to be disregarded. Respondent has stressed that there is no affirmative evidence of metastasis and that therefore a conclusion of dissemination of cancer cells outside the tumor is insupportable. But this does not follow. The evidence indicates that even though there may be no observable metastasis, an unmanifested migration of cancer cells to other parts of the body may have occurred prior to *101 surgery. Cf. Welch v. County of Essex, supra. If it is reasonably probable that the accident and the resulting trauma to the tumor, assuming it occurred, aggravated the growth or the deleterious effect of this cancer in any way, recovery of compensation must be allowed. Kling v. Central Lumber and Millwork Co., supra (3 N.J. Super. at page 156).
It is settled that in review of workmen's compensation cases great weight must be given to the judgment of the County Court. See Augustin v. Bank Building and Equipment Corp., 44 N.J. Super. 242, 243 (App. Div. 1957). We think this principle applies here, notwithstanding we find the ruling in the Division of no value because of absence of pertinent findings (other than the one unwarranted finding mentioned above). The County Court judgment will not be disturbed unless a study of the record indicates that the interests of justice plainly call for it. Ibidem; Mewes v. Union Bldg. & Construction Co., 45 N.J. Super. 88, 90 (App. Div. 1957). Ordinarily a fair criterion for that purpose is the existence of substantial evidence to support the findings underlying the judgment. Cf. Augustin v. Bank Building and Equipment Corp., supra (44 N.J. Super. at page 250). In the present case the medical factual issues are closely balanced, the predominance of the credible and logically persuasive proofs leaning, in our candid opinion, toward the position of the respondent. We think this is so particularly in respect to the issues as to whether the trauma affected the tumor itself, and, if it did or not, whether any increased rate of growth of the tumor resulted therefrom. But we cannot say that there was not substantial evidence in support of the conclusion of the County Court on these matters nor that the evidence contra overwhelmingly outweighed the supporting proofs. We consequently arrive at the conclusion that the interests of justice do not call for a reversal in this case.
Affirmed.