THE HUDSON BUS TRANSPORTATION CO., INC., A CORPORATION OF NEW JERSEY, PROSECUTOR, v. THE BOARD OF PUBLIC UTILITY COMMISSIONERS OF THE STATE OF NEW JERSEY, INTER-CITY TRANSPORTATION CO., INC., A CORPORATON OF NEW JERSEY, AND PUBLIC SERVICE CO-ORDINATED TRANSPORT, A CORPORATION OF NEW JERSEY, DEFENDANTS.

Submitted January 18, 1944—Decided May 17, 1944.

Before Justices CASE, DONGES and PORTER.

For the prosecutor, *Thomas J. Armstrong* and *Messano & Messano*.

For Inter-City Transportation Co., Inc., *A. Harry Moore*.

The opinion of the court was delivered by

CASE, J. Prosecutor questions three decisions by the Board of Public Utility Commissioners with respect to the approval of municipal consents for intrastate bus operation by the Inter-City Transportation Co., Inc. The original application for approval appears to have been filed on December 2d, 1941. Hearings were held thereon and on May 21st, 1942, the board denied the application upon the ground of policy. On application of Inter-City a reargument of the case was had July 2d, 1942, following which, on October 22d, 1942, the commission modified its earlier decision and approved seven municipal consents (Ridgewood, Woodridge, East Rutherford, Carlstadt, Maywood, Hasbrouck Heights, Union City) for the operation of fifteen buses subject to restrictions and conditions. Later, September 24th, 1942, an application was filed for approval of an eighth municipal consent, that of the City of Hackensack, and on December 23d, 1942, approval was granted. Meanwhile, early in December, 1942, the present prosecutor, the Hudson Bus Transportation Co., Inc., applied to the commission alleging itself to have been aggrieved by the decision of October 22d, 1942. and asking that the decision of that date be vacated and that the matter be reheard. The commission heard such witnesses as prosecutor produced and on March 25th, 1943, filed a decision wherein it declined to vacate the earlier finding.

The writ of *certiorari*, as printed in the record, bears no *allocatur*. There is a notation which we understand is intended by counsel to carry the information that there had been an opinion to the effect that the writ should be allowed. No opinion is submitted or referred to. We express our view that, supposing the circumstance to be as we have assumed, the writ should nevertheless have been submitted to the court or a justice for formal allowance.

We have before us the respective decisions of May 21st, 1942, October 22d, 1942, December 23d, 1942, and March 25th, 1943, with the various proceedings leading to those several decisions. The refusal by the board to disturb its earlier decisions appears to be the excuse for an attempted review of them, the one against which main dissatisfaction is expressed, namely, that of October 22d, 1942, having been made a year before the issuance of the writ.

Prosecutor's chief contention is, as we have said, that the board's decision of October 22d, 1942, for one reason or another, was unlawful. We believe that prosecutor was in *laches* in seeking a writ to review the decisions of October 22d and December 23d, 1942, and that it may not, having omitted its suit for review in season, apply for discretionary reconsideration by the tribunal of original jurisdiction and, failing therein, make that refusal the ground of attack. The Public Utilities Statute, *R. S.* 48:2–43, provides that no *certiorari* shall be allowed unless application therefor be made within thirty days from the date upon which the order becomes effective. Whether or not a statutory limitation upon the time within which *certiorari* may issue is reasonable will be determined upon the facts of each case. *Red Oaks, Inc.*, v. *Dorez, Inc.*, 117 *N. J. L.* 280; *Owen* v. *Atlantic City*, 125 *Id.* 145. It does not appear when the application for the present writ was made, but it was of necessity some time after, and if the date of the writ is a criterion a long time after, March 25th, 1943. We see no reason why an application to the Board of Public Utility Commissioners to reconsider a decision should be in a status different from a like application to any other tribunal. An appeal to the reviewing jurisdiction of a higher court should be directed at the decision in which the error is said to lie and not at the refusal of the trial tribunal to reconsider, or upon reconsidering to change, that decision. *Cf. Pink* v. *Deering*, 129 *Id.* 552; *In re Whittier*, 115 *N. J. Eq.* 563. The decision of March 25th, 1943, does two things; (1) it denies prosecutors' request to vacate the decision of October 22d, 1942, and (2) it modifies certain of the restrictions appended to the earlier decision. Prosecutor does not complain of the modifications.

Its alleged grievance lies in the refusal to vacate. We find no such abuse of discretion in that determination as within our decisions (*Nelson v. Eastern Air Lines, Inc.*, 128 *N. J. L.* 46, 58) is ground for reversal of a discretionary order. It seems, therefore, on procedural grounds, that none of the official acts complained of should be disturbed. We are led to these observations by the lack of an *allocatur*.

Nevertheless, we have considered the merits as presented. The initial refusal by the board on May 21st, 1942, to approve certain municipal consents and so to authorize Inter-City to operate a limited intrastate bus service was not an adjudication of legal rights. It was not such a judgment as would have been *res judicata* against a later renewal of the application for affirmative action. It went on a question of public convenience and public policy, control over which had been reposed by the legislature in the board, *R. S.* 48:2–14. Hudson Bus Transportation Co., Inc., was represented at all hearings on Inter-City's original application. The jurisdiction of the board to rehear, and to extend, revoke or modify an order is statutory, *R. S.* 48:2–40. When the request by the latter company for a rehearing on its application came on to be heard the Hudson Bus Company had full notice. It was clear that the moving party and the board purposed to review the testimony already taken, and no objection was voiced to the procedure. Inter-City had brought and offered witnesses but their examination seems to have been considered unnecessary. Prosecutor was granted and presumably availed itself of the privilege of filing a brief. On the record as it stood and on the new arguments the board made its decision of October 22d, 1942, approving the consents mentioned *supra* and thus, to that extent, modifying its former decision. Our attention is called to no dissent from the procedure until January 7th, 1943, two and one-half months after the board's decision, when the commission was in its second sitting on prosecutor's application for a further rehearing.

It is said that the proofs fail to establish that the proposed facilities would serve public convenience and conserve the public interests. We consider that these matters are suf-

ficiently established by the testimony. The determination of the board was reasonable. It will gain nothing to review the voluminous proofs. When a state tribunal has, after due hearing, passed on a question within its jurisdiction, and with whose determination it is charged by statute its findings should not be reversed, unless unwarranted in law or unfounded in fact, or unless a discretionary power has been plainly abused. *Perth Amboy* v. *Board of Public Utility Commissioners,* 98 *N. J. L.* 106; *O'Connor* v. *Board of Public Utility Commissioners,* 128 *Id.* 35; *Collingswood* v. *Water Supply Commission,* 84 *Id.* 104; *affirmed,* 85 *Id.* 673.

It is further said that the board had no jurisdiction to entertain the application which led up to the decision in October 22d, 1942, for the reason that one of the three members who constituted the board on the giving of the May 21st decision had meanwhile died and been replaced by another. *Rospond* v. *Decker,* 109 *N. J. L.* 458, and *Dorman* v. *Usbe Building and Loan Association,* 115 *Id.* 337, are cited in support, but those cases are clearly distinguishable. The Board of Public Utility Commissioners consists of three members, *R. S.* 48 :2–1, and acts through a majority. Its proceedings in the instant case, including the testimony, were recorded at length. Under the statute, *R. S.* 48 :2–32, it is not necessary for all of the members to hear and observe the witnesses; even a single member may sit for the taking of testimony.

There were rehearings at which any litigant who so desired could present new testimony and new arguments and at which it was thoroughly understood, without objection discovered by us in the record, that the testimony already taken would be reconsidered. A majority of the board that rendered the earlier decision sat and constituted a majority on the reconsideration and voted for the changes therein. The vote in each instance was the unanimous vote of the commission.

Prosecutor further argues that because Inter-City operated an interstate bus service under the authority of the Interstate Commerce Commission the Board of Public Utility Commissioners of the State of New Jersey may not lawfully confer upon it the authority to do an intrastate business. We do not

so understand. Our statutes do not prohibit a company which does an interstate business from also, under proper restrictions and with the necessary consents and approvals, doing an intrastate business. *Cf. Nutley-Times Square Service* v. *Board of Public Utility Commissioners,* 109 *N. J. L.* 289. Prosecutor cites, as indicating *contra, R. S.* 48:4–14 which imposes a gross franchise tax of five per centum upon intrastate operation, payable to the municipalities whose streets are traversed, and *R. S.* 48:4–20 which imposes a tax of one-half cent on interstate operation for each mile an auto bus shall have been operated over the highways of this state; and the suggestion is that these two classes of operation with different forms of taxation are incompatible. But whatever superficial force accompanies that statement is quite nullified by the further provision in section 48:4–20 that no excise shall be payable thereunder for the mileage traversed in any municipality to which the owner or operator has paid a gross franchise tax under section 48:4–14. The inference seems to be that an interstate bus coming within the scope of 48:4–20 may also be permitted to operate in such fashion as to be within the scope of 48:4–14. Many railroad companies do both an intrastate and an interstate business. Other forms of public utilities likewise. Whether or not the intrastate business of this utility will, in actual operation, prove to be incompatible with its interstate business remains to be seen. Further, we do not interpret the use of the word "termini" in *R. S.* 48:4–1 to mean, as prosecutor seems to contend, constructed terminal facilities which shall mark the beginning and the end of the physical movement of a bus. The termini are the limits of the area wherein a passenger may be both picked up and discharged, in other words, wherein a local or intrastate business may be done.

Prosecutor advances as a further contention that the board erred in permitting Inter-City to operate buses pursuant to its decisions of October 22d, 1942, December 23d, 1942, and March 25th, 1943, without any judgment or order to that effect having been made or entered. We regard the decisions as orders in the sense that they carry the board's effective direction. *R. S.* 48:4–3 provides that no auto bus shall

operate without the consent of the board or body having control of the public streets over which the auto bus is operated. *R. S.* 48:2–14 provides that no privilege or franchise granted to any public utility by a political subdivision of the state shall be valid until approved by the board, and that the board, in granting approval, may impose such conditions as the public interest may reasonably require. Without information from counsel as to what statutory procedure was being followed we assume that the proceedings were under *R. S.* 48:2–14. The decisions, so named, contained the active and immediately effective approval of the municipal consents and, further, such conditions of operation as the board deemed proper. They seem to meet the statutory requirement. If they are to be counted as mere opinions and not as orders or determinations, it is difficult to understand why prosecutor is here on this branch of the case. *Newark* v. *Fordyce,* 88 *N. J. L.* 440. If the complaint is that respondent is operating without authority, prosecutor's relief should have been sought by some other form of remedy. The question before us is not whether respondent is pursuing an unauthorized course of conduct but whether the specified official acts of the board are legal.

Finally, it is said that the board exceeded its jurisdiction in that it sought to enlarge an interstate operation restricted by the Interstate Commerce Commission. If the respondent is acting contrary to the rulings of the Interstate Commerce Commission, that commission may be relied upon to assert its authority. We have no supervision thereover. The effect upon intrastate operation was considered above.

The decisions of October 22d, 1942, December 23d, 1942, and March 25th, 1943, are approved and the writ dismissed, with costs.