CITY OF JERSEY CITY, PETITIONER-APPELLANT, v. LEHIGH VALLEY RAILROAD COMPANY AND DIVISION OF TAX APPEALS IN THE STATE DEPARTMENT OF THE TREASURY, RESPONDENTS-RESPONDENTS.

CITY OF JERSEY CITY, RESPONDENT-APPELLANT, v. NATIONAL STORAGE COMPANY AND DIVISION OF TAX APPEALS IN THE STATE DEPARTMENT OF THE TREASURY, PETITIONERS-RESPONDENTS.

Argued April 21, 1952—Decided May 12, 1952.

*Mr. Milton B. Conford* argued the cause for appellant, City of Jersey City (*Mr. John B. Graf*, attorney; *Mr. Joseph F. S. Fitzpatrick* on the brief).

*Mr. Raymond J. Lamb* argued the cause for respondent, National Storage Company (*Messrs. Markley & Broadhurst*, attorneys; *Mr. Edward A. Markley* on the brief).

The opinion of the court was delivered by

WACHENFELD, J.   These are 15 consolidated appeals from the Division of Tax Appeals in the Treasury Department certified here on our own motion.   They involve the assessments on three parcels of land located within the waterfront terminal of the Lehigh Valley Railroad, commonly known as the "Black Tom" terminal, in Jersey City, and relate to the five years 1946 to 1950, inclusive.

Many years ago, National Storage Company, a wholly owned subsidiary of the railroad, acquired a waterfront tract of approximately 91 acres.   Most of the land was leased to the parent company and developed by it as a railroad terminal. The three parcels in question, lots 3-C, 3-D and 3-E, each approximately one acre in area, were retained by National. At one time, all three had warehouses built upon them.   The buildings on 3-D and 3-E were destroyed in the memorable "Black Tom" explosion in 1916 and were never rebuilt.   The warehouse on 3-C, though damaged in the explosion, was repaired and restored to its accustomed use.   On all the assessing dates in question, except October 1, 1949, the entire building was under lease to Greenwich Stores, Inc., a warehouse corporation.   On the latter date, Greenwich still occupied all but the two upper stories of the five-story section, which, so far as the record shows, were then vacant and idle.

The recent tax history of the property helps clarify and explain the issues here presented.   From 1943 to 1950, inclusive, all three parcels were assessed by the city at the rate of $29,000 per acre, the actual assessment on each varying according to its size.   In each year prior to 1950, these

assessments were revised by the Hudson County Board of Taxation to $10,000 per acre, and in the final year to $20,000 per acre. The rates per acre are close approximations in each instance and are adopted by both sides for convenience in discussion.

Appeals were taken for the years 1943, 1944 and 1945 to the State Board of Tax Appeals, which affirmed the valuations determined by the county board.

Twelve of the assessments now under consideration, covering the years 1946 to 1949, were the subject of appeals taken by the city to the Division of Tax Appeals from judgments or assessment revisions of the county tax board. The 1950 assessments, set by the county board at the $20,000 per acre rate, were appealed to the Division by the National Storage Company. All 15 appeals resulted in a determination by the Division that the $10,000 per acre rate represented the true value of the properties in each of the years involved.

The city, as appellant in the cases relating to the years 1946 to 1949, introduced as its only witness a valuation expert, William C. Stewart. He testified to a true value of $37,000 per acre for all the tax years in question, including 1950. He regarded the parcels "as an integral part of the Black Tom Terminal area which, due to the ownership and location within the terminal area, could not be divorced from valuation of the entire terminal as I considered it." When asked whether he valued the property "in railroad use," he replied in the affirmative.

On motion, Stewart's testimony was stricken so far as it related to the 12 cases in which the city was the appellant. This ruling by the Division was based on the following provisions of the Railroad Tax Acts of 1941 and 1948:

*R. S.* 54:29A–17: "On or before November first in each year the commissioner shall determine the true value, as of the preceding January first, of all property used for railroad purposes in this State. He shall, in such determination, ascertain values according to the following classes:

\*       \*       \*       \*       \*       \*       \*       \*

II. The value of the other real estate used for railroad purposes in each taxing district in this State, including the roadbed (other than main stem), tracks, buildings, water tanks, riparian rights, docks, wharves and piers, and all other real estate, except lands not used for railroad purposes; * * *."

R. S. 54:29A–4: "All the property of a railroad company not used for railroad purposes shall be assessed and taxed by the same assessors, in the same manner and at the same rate as the taxable property of other owners in the same taxing district."

R. S. 54:29A–11: "Taxes assessed pursuant to this act shall be in lieu of all other State or local taxation of or measured by property taxable hereunder, other than assessments for benefits."

Since the statutes require that property "used for railroad purposes" be assessed exclusively by the State, the trial panel held that a valuation based upon such use could not be shown in order to sustain and justify a local assessment, saying:

"He can give us his opinion of value on any basis that he chooses, but if he gives his opinion of value on a basis that has no legal foundation or legal merit, then I think it is in order, if motion is made by the other side, to dismiss the appeal, because there is no proper proof before the Board or panel representing the Board, for us to take any action in disturbing the County Board's figure of value."

It therefore struck out Stewart's testimony and dismissed the appeals relating to the years 1946 to 1949. The Division of Tax Appeals subsequently affirmed its action.

Stewart's testimony was allowed to stand in the 1950 appeals in which National Storage Company was the appellant, as no motion to strike was made in those cases. Presumably it was weighed and considered by the Division along with the testimony of the taxpayer's expert who testified to a value of $9,000 per acre.

The city now appeals from all 15 of the determinations made below, reducing the valuations in each case to $10,000 per acre, and the appeals were consolidated by order of the Appellate Division prior to certification here.

Although conceding "that property used for railroad purposes is required to be assessed by the State," the city nevertheless urges the admissibility of Stewart's valuations, ad-

mittedly predicated upon such use, to sustain local assessments by asserting: "We will show  *  *  *  that the actual use of the property here in question is and was during the period here involved for railroad purposes," and "Thus, if the question of the nature of actual use becomes material the property must be found to have been in railroad use on the present record."

It seeks to justify the amount of its assessment by evidence which, if borne out by the record, would deprive it of the power, under the cited statutes, to make any assessment whatever on the property.

██ The location of property and its proximity to rail and water transportation are cogent factors in determining its true value, but such proximity does not, of itself, mean the property is used "for railroad purposes" within the meaning of the applicable statutes. A warehouse or storage lot, owned by a corporation not authorized to engage in the railroad business, even though located within and surrounded by a railroad terminal, is not in the same status as trackage, depots and facilities for the storage, maintenance and repair of railroad equipment, without which the operation of the utility would be crippled.

It is suggested this case is controlled by the holding in *Jersey City v. State Dept. of Taxation, etc.,* 136 *N. J. L.* 353 (*Sup. Ct.* 1947). The cases are not analogous. There the factual situation was different and the question considered here was not presented. That litigation involved valuations made on the basis of "the highest and best use" of properties owned by a railroad and located within its terminal. In the case *sub judice* we are concerned with the question of whether valuations based upon actual and present railroad use can be introduced to support assessments which would be illegal if the basis on which the valuations were made was shown to be true in fact. The mere asking of the question brings a negative answer.

As to the 1950 assessments, Stewart's testimony was not stricken because no such motion was made. The conclusion

reached by the Division of Tax Appeals indicates little, if any, weight was accorded it, apparently as it was predicated solely on the erroneous basis of actual use for railroad purposes. The witness conceded the property could not be sold by the owner "for any price approximating its value from the standpoint" from which he had appraised it.

The only other evidence as to value before the Division was that of the respondent's expert, who based his conclusions on the size and location of the properties, their access to streets and the waterfront, and sales of similar properties in the vicinity.

In a similar situation encountered in *In re New York State Realty & Terminal Co.*, 5 *N. J. Super.* 156 (*App. Div.* 1949), the court said:

"The valuations of these properties were made by the unanimous vote of the panel of the State Board and, in that situation, valuations so ordered should not be set aside unless entirely clear that the evidence will not fairly support them."

There was ample evidence here to sustain the conclusion unanimously arrived at by the Division of Tax Appeals. The judgments below are affirmed.

*For affirmance*—Justices HEHER, WACHENFELD, JACOBS and BRENNAN—4.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices OLIPHANT and BURLING—3.