45 N.J. Super. 88 (1957)
131 A.2d 561
WALTER H. MEWES, PETITIONER-APPELLANT,
v.
UNION BUILDING & CONSTRUCTION CO., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1957.
Decided May 3, 1957.
*89 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Charles L. Morgan argued the cause for petitioner-appellant.
Mr. Isidor Kalisch argued the cause for respondent-respondent.
*90 The opinion of the court was delivered by CLAPP, S.J.A.D.
The petitioner was awarded compensation by the Workmen's Compensation Division for the loss of his left eye. The County Court reversed, and the petitioner now appeals to us, raising two, largely factual, questions: first, did an accident occur; and, second, if so, did it aggravate a quiescent infection located in the eye and thus contribute to its loss?
On a review of factual findings in a workmen's compensation case, the criterion governing this court is whether the interests of justice have been satisfied. Augustin v. Bank Building and Equipment Corp., 44 N.J. Super. 242 (App. Div. 1957). The first question here is whether there was, in fact, an accident. Petitioner's testimony was to this effect. On August 20, 1953 he was applying form oil to certain wooden forms with a large whitewash brush, when the brush, striking steel reinforcing rods which covered the forms, spattered oil over his face and into his left eye. It left a burning sensation in the eye. He reported the incident to his foreman and did no work during the remaining hour of his working day. The next day he returned to the job, though his eye bothered him "terrific." On his cross-examination there is some suggestion that he, perhaps that day, signed a report of an accident, filled out by a shop steward. In any event, he worked a full day and, at his foreman's suggestion, went to a doctor for treatment that night (the day after the accident, not three days thereafter, as the County Court said). This doctor sent him to an eye specialist, whom he saw the next morning. The accident itself was corroborated by two co-workers, and quite convincingly so.
The employer points to four circumstances as discrediting the story of an accident. First, it notes that petitioner himself paid a substantial part of his medical expenses without looking for reimbursement from it. The employer argues that these are "not the actions of a man who had sustained an accident." Bouvier v. County Gas Co., 134 N.J.L. 89 (Sup. Ct. 1946). But this argument is rather *91 thin. Not only did the employer (or the insurance carrier) meet a good portion of his medical expenses, but it paid him compensation for temporary disability, 11-2/7 weeks, and for permanent disability, 33 weeks, before it decided to reject the claim. It is hard to believe that in those 44 weeks, while he was paying or at least incurring most of these expenses, his actions were those of a man who had not sustained an accident.
Second, something is attempted to be made of the failure of petitioner to produce at the hearing the doctor who saw him on August 21, 1953. In view of the proofs here, indicative of an accident, we do not think this to be a matter of much moment. Incidentally, since this doctor was not an eye specialist, his testimony would not have been of great help on the question of causation; nor would his testimony as to the outward appearance of the eye on August 21 have been a very significant matter under the theory of causation expounded by petitioner's expert. The County Court and the employer rely also upon the failure of petitioner to produce at the hearing a New York doctor who examined petitioner's eye once in connection with the proposal of the employer's authorized doctor to put him into a hospital for thyroid therapy treatment. This does not look to be an important matter either.
Third, the employer and the County Court place some weight upon the testimony of the eye doctor, who saw petitioner on August 22nd, indicating that according to the doctor's records the first time petitioner spoke of getting oil into his eye was on January 19, 1954. However, the doctor seems to have been in error here. His son who was associated in practice with him, said that the first time petitioner saw him (the son), petitioner spoke of the entry of the oil in the eye; that the son didn't think "those records are valid"; and in fact, under date of September 21, 1953 he made a notation on the record as to the oil in the eye. Incidentally, petitioner testified very positively that he told the father on August 22 that he had gotten form oil in *92 his eye while on the job, but that the doctor said, "No you didn't; you got iritis."
Fourth, the County Court casts imputations upon the bona fides of petitioner's claim because his petition was not filed until a year and five days after the accident. However, the petition had been verified eight days before  seven weeks after the employer had ceased paying compensation voluntarily. These suspicions of the County Court, which had little, if anything, to support them, undoubtedly affected its decision on the question of causation.
The deputy director, who saw the petitioner and his co-workers testify as to the accident, said he believed they were telling the truth. Indeed, he found the proof to be conclusive on the point. We, too, are convinced that the accident occurred as petitioner stated.
We turn then to the more difficult question of causation. Petitioner's medical expert first examined his eye almost a year after the accident and just before it had to be enucleated. On the stand the doctor rested his opinion upon what he then had learned and also upon petitioner's story as to the spattering of oil in the eye, a story related to him in a premise to a hypothetical question. His opinion was this: the oil had irritated the eye, stirring up its neurovascular mechanism and creating an inflammatory reaction throughout the entire uveal tract, posterior as well as anterior, which disturbed a quiescent infection there. He added that he would not expect to have found (what the employer's authorized treating physician said was not there) any visible evidence of a burn on the eye, as a result of such an inflammation. In short, his testimony was that the irritant had excited or aggravated the quiescent infection, producing uveitis, which all doctors agreed was the cause of the eye's destruction. The law is settled that if an accident combines with a latent condition to give rise to a disability, it is to be taken as one of the contributory causes of the disability, satisfying the statutory requirement of causality. Furferi v. Pennsylvania R. Co., 117 N.J.L. 508 (E. & A. 1937); Marshall v. C.F. Mueller *93 Co., 135 N.J.L. 75 (Sup. Ct. 1946); 1 Larson, Workmen's Compensation § 12.20 (1952).
Unfortunately the employer's four medical experts, who are all men of standing in their profession, did not have much to say of the effect which an irritant, such as very dirty form oil, would have not only in creating the inflammatory reaction mentioned but in thus arousing a quiescent infection and producing the uveitis. Some of them seemed to look upon petitioner's theory as an attempt to establish that the oil in the eye would of itself be sufficient to produce the uveitis. In any event, the first of these doctors to take the stand seems to have been bent on negating such a theory. And the next to take the stand said he could not see how oil could have caused the uveitis; in his view the infection must have been systemic or metastatic in origin. Neither of these doctors seems to deal with the question whether the oil acted as an irritant, lighting up a latent systemic infection.
The last doctor on the stand, a Philadelphia practitioner, did say that there was "absolutely no aggravation of a pre-existing condition," but he directed practically all his testimony to the effect of chemical burns which he said are "always * * * severe" and which anyone, even if he is not a "brilliant man," can see. As above noticed, petitioner's theory does not in any way depend upon such a burn; there were no accompanying "facial burns." Later this doctor said that the burn "must have been an extremely mild one" because it was not visible on August 22, 1953. He added that such a burn produces a mild conjunctivitis, just a slight redness; that uveitis is not associated at all, unless there is a severe chemical burn. He rested his opinion on the complete absence of any evidence of a chemical burn, whereas petitioner's doctor did not use the term, burn, but rather spoke of an irritant of an inflammatory sort.
The employer's fourth doctor, the father of one above mentioned, had seen petitioner on August 22. He said he found at that time no "evidence of inflammation in the front of the eye. That was the surface of the eye." Yet *94 he did on August 22 diagnose the condition as iritis, which he defined as inflammation of the iris, the curtain in the front of the eye which contracts the pupil. In any event he testified broadly and flatly:
"At no time during the treatment of this case did we feel that an external injury of any kind had any bearing on this eye * * *."
The doctors, father and son, were petitioner's treating physicians, and the employer invokes the rule of thumb, applicable under certain circumstances, that where there is a conflict in the testimony of medical experts, the court will give greater weight to that of the treating physician. Fusco v. Cambridge Piece Dyeing Corp., 135 N.J.L. 160 (E. & A. 1947); Bialko v. H. Baker Milk Co., 38 N.J. Super. 169, 171 (App. Div. 1955). However, it was stated below by the employer's (or the insurance carrier's) attorney that these two doctors were authorized by the employer, or the carrier, to treat the petitioner; that when they "took over" the treatment, they made a report to the employer, or the carrier, and were in part paid by it; and that apparently as a result of their report petitioner received workmen's compensation, starting in November 1953. To the Deputy Director it appeared as though these two doctors, who were well acquainted with the workmen's compensation law, had honestly changed their minds as to the compensability of the claim nine or ten months after the accident, when they learned of the Philadelphia doctor's opinion, because shortly thereafter compensation payments ceased.
Voluntary payments of compensation should by no means be deemed to be a waiver by the employer of its defenses, for as a matter of policy the law should do all it can to encourage immediate voluntary compensation when an employee is injured. But here the payments ran for almost a year, amounting to a substantial sum, while the petitioner was in the care of the employer's authorized treating physicians. The employer concedes that such extensive payments constitute an admission against interest on the issue of causation. Cf. Burns v. Edison, 92 N.J.L. *95 288 (Sup. Ct. 1919); Ferraro v. Zurcher, 12 N.J. Super. 231 (App. Div. 1951). Indeed, they constitute a factor in the decision here.
We suppose mention should be made also of certain tests made by one of the employer's expert witnesses; he put form oil in rabbits' eyes and observed that the eyes showed no irritation. But the oil was applied with a sterile eye dropper and not splattered off a dirty whitewash brush; and there was nothing to indicate that the oil was of the very dirty sort, used by petitioner, which his doctor said would be quite dangerous.
So, dismissing the testimony as to these tests, we are confronted with a case where there is more or less conflict in the experts' opinions. It was said by one of them, called by the employer, that the cause of uveitis  correcting himself, he said there must be at least several causes  is "unknown" or "usually unknown"; or as another of the employer's doctors remarked, many times it is never discovered. We cannot but weigh, with some reserve, dogmatic opinions as to the causation of a uveitic condition, when the origin of such a condition is usually never discovered.
In this case the circumstances seem to come to the aid of petitioner's case. The degeneration of the eye following the accident  vision on August 22, 1953, mere light perception on August 31  was, as petitioner's doctor stressed, so rapid as to indicate that the irritating oil must have acted as an exciting episode. One of the employer's treating physicians also remarked "the deterioration of the eye was so rapid." Yet though (as this doctor testified) "immediately * * * many and all tests" were made "most thoroughly" to locate the cause of the infection, none was found. One might suppose that if there was some most unusually sharp exciting toxic condition in another portion of the body, it might have been discovered in these tests.
Beyond that, there is the significant fact that uveitis developed only in the very eye involved in the accident  even though there is undisputed evidence that it was the other eye, the right eye, that had been subjected to uveitis *96 in the past. The Philadelphia doctor testified that he was really concerned about the right eye, hoping that there would be no trouble there in the future. Finally it is to be observed that the uveitis followed no previous symptom in the left eye.
This concatenation of circumstances is such as to leave us with the conviction that the Division's decision for the petitioner was proper and that the County Court erred.
Reversed; Division's judgment reinstated.