JOSEPHINE RICCIARDI, PETITIONER-RESPONDENT, v. MARCALUS MANUFACTURING COMPANY, RESPONDENT-APPELLANT.

Argued February 18, 1958—Decided April 3, 1958.

*Mr. Edward B. Meredith* argued the cause for the respondent-appellant.

*Mr. Isadore Rosenbloom* argued the cause for the petitioner-respondent (*Messrs. Marcus & Levy,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is a workmen's compensation proceeding. The Workmen's Compensation Division entered a judgment of temporary and permanent disability in favor of the petitioner. On appeal to the Passaic County Court, that court after a trial *de novo* on the record, entered a judgment affirming the Division. The respondent pursued a further appeal to the Appellate Division, which court affirmed the two lower tribunals. 47 *N. J. Super.* 90 (1957). We granted certification. 25 *N. J.* 405 (1957).

The issue concerns the scope of appellate review on factual findings in workmen's compensation cases, and the applica-

tion of the appropriate review standard to the evidence in this case.

■ On the scope of review the Appellate Division after an exhaustive analysis of the evidence held:

"It is settled that in review of workmen's compensation cases great weight must be given to the judgment of the County Court. See *Augustin v. Bank Building and Equipment Corp.*, 44 *N. J. Super.* 242, 243 (*App. Div.* 1957). We think this principle applies here, notwithstanding we find the ruling in the Division of no value because of absence of pertinent findings (other than the one unwarranted finding mentioned above). The County Court judgment will not be disturbed unless a study of the record indicates that the interests of justice plainly call for it. *Ibidem; Mewes v. Union Bldg. & Construction Co.*, 45 *N. J. Super.* 88, 90 (*App. Div.* 1957). Ordinarily a fair criterion for that purpose is the existence of substantial evidence to support the findings underlying the judgment. Cf. *Augustin v. Bank Building and Equipment Corp.*, *supra* (44 *N. J. Super.* at *page* 250) In the present case the medical factual issues are closely balanced, the predominance of the credible and logically persuasive proofs leaning, in our candid opinion, toward the position of the respondent. We think this is so particularly in respect to the issues as to whether the trauma affected the tumor itself, and, if it did or not, whether any increased rate of growth of the tumor resulted therefrom. But we cannot say that there was not substantial evidence in support of the conclusion of the County Court on these matters nor that the evidence *contra* overwhelmingly outweighed the supporting proofs."

"Substantial evidence" is not the guiding criterion for appellate review of factual issues in workmen's compensation proceedings in this State.

■ "It is the duty of the reviewing court to weigh the evidence and determine whether the claimant has sustained the burden of proof of an accident arising out of and in the course of his employment by a preponderance of the evidence. Full and respectful consideration of the views expressed, on both fact and law, by the Division and intervening appellate courts, shall be given.

*R. R.* 1:5-4(*b*) provides:

'On a review of any cause, criminal or civil, involving issues of fact not determined by the verdict of a jury, new or amended findings of fact may be made, but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' Compare *R. R.* 4:88-13.

■ From a study of the entire record, it is the function and duty of the reviewing court to make a determination according to its considered judgment, and in doing so it is mandatory only to give

due regard to the opportunity of the hearer of the evidence to judge of the credibility of the witnesses. A finding of fact in the Division or appellate courts does not lessen the duty of the appeal court to determine the facts and evaluate them by full investigation and analysis of the evidence so as to adjudge whether the general finding is consistent therewith, *i. e.*, if upon such total consideration of the record and views expressed below, it is believed the judgment both in fact and the applicable law from which appeal is taken is correct, it should be affirmed; if the judgment is erroneous, it should be reversed or modified." *Russo v. United States Trucking Corp.*, 26 *N. J.* 430 (1958) decided this date.

Accordingly, we will weigh the evidence in order to determine whether the petitioner has sustained her burden of proof.

■ Petitioner, 46 years old at the time of the industrial accident, was a sheet wax packer. Her job entailed the piling and handling of ten-pound packages of sheet wax. On December 11, 1953, at approximately 11:15 A. M., one of the packages she was handling slid from atop of a pile and struck her on the left breast. The ensuing pain was immediate and severe, causing her to cease working for 10 or 15 minutes. During the lunch hour she examined the breast in the ladies' room and observed a red bruise approximately two inches in diameter. Three days after the accident, on December 14, 1953, the petitioner first noticed a lump on her breast. The following day she visited the plant physician, Dr. Bongiorno. Upon examination the doctor diagnosed the injury as a possible hematoma (tissue hemorrhage) and prescribed heat treatments.

Petitioner visited her family physician, Dr. Curtis, that same evening and he also recommended heat. Petitioner testified that the lump grew progressively larger and that she went to a Dr. Gallo who advised her that surgery would be necessary. She then returned to her family physician and upon his recommendation consulted Dr. Bender, a surgeon. Neither Dr. Curtis nor Dr. Gallo were called to testify at the hearing.

On March 11, 1954 the growth was diagnosed as cancerous and Dr. Bender performed a radical mastectomy (removal of left breast).

At the time of the hearing in May 1956 petitioner was in generally good physical condition and was working at a lighter job, having returned to work in August of 1954.

There was a general agreement of medical opinion at the hearing that the cancer pre-existed the accident of December 11, 1953. There was further agreement that it would have been necessary to remove the breast even if there had been no traumatic insult to the malignant area.

The only factual issues projected in this appeal is whether the trauma had aggravated, in the sense of accelerating the pre-existent condition. Inherent in this question is the further dispute concerning whether the trauma occurred to the cancerous area or to the healthy surrounding tissues. We might at this point add one *caveat*. On the question of the legal right to recover on the tendered hypothesis of aggravation, the Appellate Division held:

"* * * it may appear questionable, in terms of the theory of compensation recovery as based upon disability or death arising from accident, *N. J. S. A.* 34:15–12, 13, that a faster rate of tumor growth should be relevant to the right of recovery, where, as here, there is no dispute but that removal forthwith of the entire breast, with such impairment or disability as would have attended such surgery, would have been required even if the supposed trauma had never taken place. We are satisfied, however, that the controlling decisions pertinent to this question, though not directly in point, require the conclusion that if, in fact, the accident caused this tumor to grow faster than it would have otherwise, there must be recovery for all of the disability incidents of the disease notwithstanding that such increased rate of growth did not have anything to do with the medical decision to operate beyond making the necessity to do so manifest earlier than otherwise."

Because of the view we take, as hereinafter developed, that the petitioner has failed to sustain her burden as to whether there was aggravation of the cancer in fact, we deem it inappropriate to pass on that question within the factual context of this case. We will assume, *arguendo*, that the statute contemplates a right to recover.

We turn now to an examination of the evidence in order to determine whether the petitioner has sustained the burden of proof on her proffered hypothesis that the acci-

dent of December 11, 1953 resulted in a more rapid enlargement of the tumor than if there had been no accident.

One of petitioner's theories concerning aggravation resolved around the rapid growth of the tumor from the date of the accident until the date of surgery some three months later. When first discovered, she testified that the lump was the size of about "the tip of my pinky" and that by March 11, 1954, the date of surgery, it was the size of the end of her little finger (distal phalange). Petitioner estimated that it doubled in size during the three months prior to surgery. Her testimony was corroborated by that of several of her co-workers who testified that the growth grew in size. One co-worker compared its original size on December 14, 1953 with a "small hazel nut," and prior to hospitalization as "a little larger than a nickel."

The medical evidence indicates little increase in size. Dr. Bongiorno, the plant physician testifying for the respondent, estimated on palpation on December 15, the date of his examination, that the growth was 1 cm. (2/5'') to ½'' in size. Dr. Bender, the operating physician estimated that on the date of surgery it was 1 cm. in diameter. Examination at biopsy indicated its size to be 1½ cms. by 1 cm., while pathological examination in the laboratory showed the actual size to be 1 cm.

Dr. Bender was the first medical witness called by the petitioner. He first saw the petitioner on March 2, 1954, but at that time she never gave him any history of the accident. It was only after her temporary sickness benefits had been stopped that petitioner, sometime in August or September, informed Dr. Bender of the accident. Dr. Bender testified in answer to an extended hypothetical question setting forth the lay testimony as follows:

"Well, it seems within reason that if this petitioner had a mass that gradually increased in size from the time of the injury until it was removed, a factor of trauma or injury might cause an acceleration of an unkind process."

When queried on cross-examination as to whether a tumor of the type diagnosed in this case, *i. e.,* an infiltrating

carcinoma, might be expected to grow from the "tip of your pinky to 1 x 1½ centimeters," he responded "Yes." And when asked: "Now, in this particular case is there any evidence either in the pathologic report or in your observations during surgery, that this woman's cancer was, in fact, aggravated by trauma?" he answered "that would be a very, very difficult thing to say. If you want a positive answer, I would say no." It is evident that much of Dr. Bender's conclusions were based upon the lay estimates concerning the growth of the tumor. But the lay evidence on this point is at best tenuous, and at worst directly contradicted by the medical opinion concerning size. Dr. Friedman, who testified for petitioner, indicated that if a trained observer measured on two separate occasions the same tumor he would be approximately 30% in error, while if two separate doctors measured the same tumor the error could be 60% and "if a lay person measured it two times the error would be more than 60%."

While the medical estimates of the size in this case seem fairly constant, the lay testimony is highly disparate and does not form a firm base for opining. Dr. Friedman's testimony on the point is sufficiently indicative of the untrustworthiness of hasty lay estimates concerning size when experts may have a large area of error.

Dr. Friedman, relying on petitioner's testimony that there was no lump on the breast prior to trauma, her previous good health and the appearance of a black and blue mark two days after the accident, stated that "this traumatized tumor rapidly enlarged so that three days after the trauma a definite lump was felt for the first time." When cross-examined as to how much more rapid the growth was than it would have been without trauma he answered "slightly" more rapid. Dr. Friedman admitted that an "average" tumor without trauma would increase anywhere from 25% to 400% in size. While his belief as to the growth of petitioner's tumor, based upon the lay observations, was that it increased five or six times in volume, we have previously alluded to the state of the proofs on the question of the increase in size

of the tumor. Suffice it to say that the pillars of Dr. Friedman's opinion have been considerably eroded by the weaknesses therein.

Respondent produced as a medical witness Dr. Yaguda, who had studied the pathological reports and made a microscopic examination of the tissue slides. Dr. Yaguda concluded that there was no evidence from which a deduction could be made that trauma had aggravated the cancerous condition. This opinion concerning the negative nature of pathological evidence was confirmed by Dr. Bender and Dr. Friedman. Dr. Yaguda testified that the specimen sections did not present "the picture of a rapidly growing tumor." Dr. Hoffman, a cancer expert, testifying for respondent concluded that this was "a low grade, slowly growing type of cancer." If one compares the estimate of Dr. Friedman that an untraumatized tumor could be expected to grow anywhere from 25% to 400%, with the estimate of Dr. Bongiorno as to the size of the growth on December 15, 1953 (1 cm. to ½″) and with the actual size established by the pathologist in the laboratory after surgery (1 cm.), the testimony of Dr. Yaguda and Dr. Hoffman are confirmed.

We next consider the crucial question of whether there was injury to the tumor itself by the accident rather than to the surrounding breast tissue.

Petitioner testified that the breast did not become black and blue until two days after the accident. On this factual premise it was Dr. Friedman's opinion that the trauma was to the growth itself as distinguished from the healthy surrounding breast tissues. Dr. Friedman concluded that if the injury was to the surrounding tissue, ecchymosis (black and blue marks) would be apparent almost immediately. Since the ecchymosis did not appear for two days he deducted that this fact evidenced a rupture of the blood vessels in the cancer which was so deeply imbedded that it required several days for the hemorrhage to seep to the skin's surface.

At the outset there is a direct conflict between the testimony of the petitioner and the plant physician, Dr. Bongiorno. Petitioner testified that the breast was discolored at the time of her examination by Dr. Bongiorno on December 15, 1953. The doctor, testifying for the respondent, claimed that the breast was not black and blue. In our opinion this controversy was conclusively resolved by the uncontradicted pathological findings of Dr. Yaguda concerning whether there had been any trauma to the tumor itself. Based upon his microscopic examination of the tissue slides Dr. Yaguda testified:

"also there is nothing in the tumor to indicate that there was any trauma to the tumor. If there had been any trauma to the tumor we should find evidence of hemorrhage there. There is no evidence of any blood pigment in the tumor to indicate that there had been any old hemorrhage, and there was no recent hemorrhage."

and further that the revealing blood pigment might be evident for the life of the patient and that "it certainly would not disappear within less than 6 months or 7 months." The microscopic examination was conducted some three months after the injury.

Removing from consideration all of the expert medical opinion revolving around whether trauma might or might not generally aggravate a cancerous condition, we feel that the medical testimony as it concerns the factual evidence in this case does not adequately support the petitioner's thesis. Dr. Bender's testimony is not particularly helpful to the petitioner. Aside from a presumptive attitude which he held that given a trauma a cancerous growth in the breast would probably be aggravated, he indicated that there was no evidence in the pathological report of the instant case to support an aggravation by trauma and at one point admitted that a determination of the question of aggravation "would be based primarily upon your pathological record which you have there." As previously indicated the pathologist, Dr. Yaguda, was of the opinion that the report did not show any evidence of aggravation. Dr. Friedman's

testimony is largely dependent upon the lay estimates concerning the size of the tumor at various periods of time. Since he indicates that expert medical examiners may err from approximately 30% to 60% in determining size, it perforce follows that lay estimates are totally inadequate.

Lastly, the state of the proofs on the question of trauma to the cancerous growth weigh heavily in support of the respondent's hypothesis that the trauma, if it occurred, did not affect the tumor itself.

For these reasons, our independent examination of the record and evaluation of all the evidence leads to the general conclusion that the petitioner has failed to sustain the burden of proof imposed upon her.

The judgment below is reversed.

FRANCIS, J. (dissenting). Workmen's compensation is designed to be a substitute or partial substitute for wages during a period of temporary incapacity arising out of work-connected injuries and thereafter during the period of payment prescribed for any permanent disability which likewise resulted from such injuries. That beneficent social purpose, in order to have practical utility, must be administered with dispatch. "The desiderata in a system of compensation are quick payment and the reduction of administrative expense." Jaffe, "The Right to Judicial Review," 71 Harv. L. Rev. 401, 408 (1958). The opinion of the majority seriously and, in my judgment, improperly dilutes the effectiveness of the remedy. The holding is that

"It is the duty of the reviewing court to weigh the evidence and determine whether the claimant has sustained the burden of proof of an accident arising out of and in the course of his employment by a preponderance of the evidence."

Thus, in effect, a burden is imposed to review the record de novo at every stage of the appellate process from the County Court through the Supreme Court. There can be no doubt of the need for promulgation of a rule as to the nature and scope of the consideration to be given to appeals

in workmen's compensation cases. But the pronouncement of the majority conflicts with established notions of the place of the administrative agency in the scheme of government. The courts and the agencies within their respective spheres of governmental action are partners, not contestants for supremacy. The agency's role is now reduced to that of a mere conduit through which the evidence gathered is passed on to the courts for effective determination. And in the field of workmen's compensation, where expeditious resolution of controversy is so vital, a doctrine that in all cases a trial *de novo* on the record is required in the Appellate Division and in this court, serves to encourage appeals on the facts and to interfere unduly with the humane design of the Legislature. Due process calls for a trial in the judicial sense somewhere along the line—not two or three such trials.

Courts generally throughout the country have reached the viewpoint that a fact finding of administrative tribunals will not be interfered with when it is supported by substantial evidence on the whole record, in the absence of a statutory requirement for a completely independent review. *Davis, Administrative Law* (1951), *p.* 868, *et seq.; Forkosch, Administrative Law* (1956), §§ 254, 257; 42 *Am. Jur., Public Administrative Law,* § 211; 2 *Larson, Workmen's Compensation Law* (1952), § 80.20; *Jaffe, "Judicial Review: 'Substantial Evidence on the Whole Record,'"* 64 *Harv. L. Rev.* 1233 (1951); *Jaffe, "Judicial Review: Question of Fact,"* 69 *Harv. L. Rev.* 1020 (1956); and see the Federal Administrative Procedure Act, 5 *U. S. C. A.* § 1009(*e*).

In the past, the appellate courts of this State have not followed a common pattern of expression in describing the nature of the judicial supervision of agency fact findings. But the trend in recent years, at least, has been away from independent review of the weight of the evidence. *Jacobs & Davis, A Report on the State Administrative Agency (Eighth Report of the Judicial Council of New Jersey,* 1938), *pp.* 13–15. Illustrations of the movement are readily

available. In unemployment compensation cases "[t]he test of judicial review is not whether we would come to the same conclusion [as the Board of Review] if the original determination was ours to make, but rather whether the fact-finder could reasonably" so conclude on the proof. *Berry, Whitson & Berry v. Division of Employment Security, Department of Labor and Industry,* 21 *N. J.* 73, 77 (1956); and see *Curtis v. Liberty Restaurant,* 4 *N. J. Super.* 13 (*App. Div.* 1949), affirmed 3 *N. J.* 1 (1949); on judicial review of a determination of the Board of Public Utility Commissioners "the court will not substitute its independent judgment for that of the board but will confine its inquiry to the ascertainment of whether the evidence before the board furnished a reasonable basis for its action." *In re Greenville Bus Co.,* 17 *N. J.* 131, 138, 139 (1954); the finding will not be reversed unless unwarranted in law or unfounded in fact or unless a discretionary power has been plainly abused. *Hudson Bus Transp. Co. v. Board of Public Utility Com'rs,* 131 *N. J. L.* 576 (*Sup. Ct.* 1944); "[i]t is now firmly settled in our system of jurisprudence that there must be sufficient or substantial competent and relevant evidence to support the findings of fact and reasonableness of the rates established by the Board." *Central R. Co. of New Jersey v. Department of Public Utilities,* 7 *N. J.* 247, 260 (1951). A decision of the Department of Civil Service will not be set aside unless not reasonably supported by competent evidence or unless arbitrary or capricious, *Dutcher v. Department of Civil Service,* 7 *N. J. Super.* 156 (*App. Div.* 1950); nor of the Alcoholic Beverage Control Director if supported by substantial evidence, *Traymore of Atlantic City, Inc., v. Hock,* 9 *N. J. Super.* 47 (*App. Div.* 1950) (which means such relevant evidence as a reasonable mind would accept as adequate to support the conclusion, *Hornauer v. Division of Alcoholic Beverage Control,* 40 *N. J. Super.* 501 (*App. Div.* 1956)), or unless it clearly appears from the entire record that it is arbitrary, unreasonable or capricious. *In re Gutman,* 21 *N. J. Super.* 579 (*App. Div.* 1952). Nor will the court substitute its

judgment for that of the Commissioner of the Department of Institutions and Agencies where there is substantial, competent and relevant evidence to support his conclusion, *Holly v. Bates,* 7 *N. J.* 191, 195 (1951); or for that of the State Board of Optometrists when supported by substantial evidence, *In re Portugal,* 44 *N. J. Super.* 7 (*App. Div.* 1957); or for that of the State Aviation Commission unless it clearly appears that no evidence was before the Commission reasonably in support of the finding. *Pennsylvania R. Co. v. New Jersey State Aviation Commission,* 2 *N. J.* 64, 71 (1949). Judgments of the Division of Tax Appeals as to valuations of properties will not be set aside unless it is entirely clear that the evidence will not fairly support them. *City of Jersey City v. Lehigh Valley Railroad Co.,* 9 *N. J.* 362 (1952); *Peter Doelger Brewing Corp. v. Division of Tax Appeals,* 137 *N. J. L.* 129 (*Sup. Ct.* 1948); affirmed *Artaserse v. Division of Tax Appeals,* 1 *N. J.* 130 (1948); "* * * the better appellate practice in cases presenting complex questions of value such as this is not to exercise the power conferred by *Article* VI, *Section* V, *paragraph* 3 of the *Constitution* of 1947 and *Rule* 3:81–13 independently to review the facts and make the assessment. * * * Appellate courts should not inject themselves into the field of original valuation in such cases except in very exceptional circumstances." *Delaware, L. & W. R. Co. v. City of Hoboken,* 10 *N. J.* 418, 424 (1952). These declarations are obviously inconsistent with the principle now announced that the appraisal of a workmen's compensation judgment in the Appellate Division and in this court is for the purpose of determining whether the workman sustained his case by the preponderance of the evidence.

In support of the position taken, the majority refer to *R. R.* 1:5–4(*b*) and 4:88–13. The former provides that "new or amended findings of fact *may* be made [on appeal], but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses"; and the latter, relating to review of proceedings in lieu of prerogative writs, says that the court "shall have power to

review the facts and make independent findings thereon, which power *may* be exercised by it to such extent as the interests of justice may require." It is not necessary to decide whether, under our present system, the review of workmen's compensation judgments beyond the County Court is in the nature of a prerogative writ proceeding under *R. R.* 4:88 *et seq.*, as it was under the former practice, or simply by the ordinary process of appeal as established by the rules of this court. 1947 *Constitution, Article* VI, *Sec.* III, *par.* 3; *R. R.* 1:2–12; 2:2–1; 5:2–5. The important fact to notice is that no mandate is imposed on this court or the Appellate Division of the Superior Court to engage in an independent review of the facts; no right is bestowed on an appellant to have or to demand such a study. No one challenges the authority of the two courts to make such findings. But the word "may" in both rules is significant. Manifestly, in context its force is intended to be permissive and discretionary in character. So the basic question is not one of authority but whether and when the authority should be exercised. Simply stated, the problem is, should the Supreme Court and the Appellate Division as a matter of course review the facts and decide independently whether the party who has the burden of proof sustained his position by the preponderance of the evidence? I think not. In my judgment, the authority should become known and should make itself felt in workmen's compensation proceedings by the restraint and not by the universality of its exercise.

Ordinarily, review of an order or determination of a state administrative agency is by direct appeal to the Appellate Division. *R. R.* 4:88–8. However, at an early date in the life of the Workmen's Compensation Act, the Legislature established a unique review mechanism, *i. e.,* an appeal to the County Court where the matter was to be reviewed *de novo* on the record made in the Workmen's Compensation Division. *L.* 1918, *c.* 149, *p.* 436. Thereafter the section went through successive changes of form and substance. *L.* 1921, *c.* 229; *L.* 1931, *c.* 280; *L.* 1932, *c.* 25. In 1953,

the duty of the County Court was to decide the merits of the controversy in a summary manner. *N. J. S. A.* 34:15–66. In that year the Legislature eliminated all of the procedural aspects of the appeal and at the present time the statute simply authorizes an appeal to the County Court and ordains that the judgment entered there shall be "conclusive and binding." The nature of the review is not prescribed. In the same year, the rules of this court were amended to set out the procedural steps of the appeal to the County Court. *R. R.* 5:2–5. However, no express requirement was made for an appeal to be heard *de novo* on the record. The rule says "[t]he trial of the appeal shall be based exclusively on the exhibits and the transcript of the record and testimony. * * * Upon the determination of the appeal, the court shall file a memorandum stating the facts and its opinion on the law." The majority opinion in this case is to the effect that that language was intended to retain the *de novo* review in the County Court and I accept the statement. However, continuance of the unique additional intermediate review—as distinguished from the direct appeal to the Appellate Division from other state agencies— furnishes additional reason for a more limited review than that which is espoused by the majority. If the appeal from the Workmen's Compensation Division were directly to the Appellate Division, I believe that the weight of authority throughout the country supports the view that the test of the legal propriety of the judgment, so far as the fact finding is concerned, should be whether it is supported by substantial evidence on the whole record. And when the judgment comes to the Appellate Division after having gone through the crucible of the County Court, can there be any reasonable justification for another decision as to whether the original determination is supported by the greater weight of the evidence—where, as in this case, both lower tribunals have reached concordant results?

If the Workmen's Compensation Act and its administration by the Division are to serve the beneficent legislative purpose effectively, the Appellate Division as a matter of

policy ought to refrain from weighing the evidence independently and should limit its appraisal of the record to a determination as to whether the fact finding which has been agreed upon by the two tribunals is supported by substantial evidence on the whole record. It should not reweigh in each case and substitute its judgment.

It has been suggested that in cases of concurrent findings the test should be whether they are supported by "sufficient" evidence. Presumably "sufficient" in this context excludes the idea of a *de novo* review and contemplates a study designed to ascertain only if there is adequate credible proof in the record from which the finding could have been made. For practical purposes, such proposal is the same as that sponsored by this opinion. However, the rule which calls for substantial evidence on the whole record has come into common use throughout the country and it has been incorporated in the Federal Administrative Procedure Act. Also, it has acquired a definite connotation, and in the interest of uniformity its adoption as a standard should prove more serviceable in discharging the judicial role, considered in relation to the purpose to be effectuated by the legislation. This is not to say that judges are automatons who will react uniformly to a given standard. The value of a common rule lies in the fact that in the process of reasoning toward the ultimate objective, their minds will be guided by the same test.

Substantial evidence on the whole record does not mean *any* evidence. Nor does it mean substantial evidence when considered in isolation from the record. It signifies more than evidence "which, considered by itself alone, would be sufficiently persuasive to induce the trier of fact to give it the credence and weight essential to support findings. It must have those characteristics to such an extent that in the setting made by the entire record the trier may reasonably find in accordance with it after giving due consideration to whatever else is shown both in opposition or in accord." *Gooding v. Willard,* 209 *F.* 2d 913, 916 (2 *Cir.* 1954). And see *Universal Camera Corp. v. National Labor Rela-*

*tions Board,* 340 *U. S.* 474, 71 *S. Ct.* 456, 95 *L. Ed.* 456 (1951); *Jaffe, "Judicial Review: Question of Fact,"* 69 *Harv. L. Rev.* 1020, 1027 (1956). But it does *not* mean that having found evidence of such probative force in support of the determination, the appellate court should then make its own independent choice between it and the evidence *contra,* even though a different decision would or might have been made if the matter were before the court *de novo. Universal Camera Corp. v. National Labor Relations Board, supra,* 340 *U. S.* at *page* 488, 71 *S. Ct.* at *page* 465.

In the administration of the Workmen's Compensation Act, for a long time we have had the rule that where two lower tribunals have considered the facts and have reached concurrent findings, neither the Supreme Court nor the Appellate Division will make new and independent determinations unless error appears which is so palpable that new findings are necessary in order to insure essential justice. *Pfahler v. Eclipse Pioneer Division of Bendix Aviation Corp.,* 21 *N. J.* 486, 492 (1956); *Mahoney v. Nitroform Co., Inc.,* 20 *N. J.* 499, 507 (1956); *Lester v. Elliott Bros. Trucking Co.,* 18 *N. J.* 434, 437 (1955); *Temple v. Storch Trucking Co.,* 3 *N. J.* 42, 48 (1949); *Trusky v. Ford Motor Co.,* 19 *N. J. Super.* 100, 103 (*App. Div.* 1952); *Ginter v. Westinghouse Elec. & Mfg. Corp.,* 11 *N. J. Super.* 338, 341 (*App. Div.* 1951), certification denied 7 *N. J.* 81 (1951); and *cf. Midler v. Heinowitz,* 10 *N. J.* 123, 129 (1952). Although these cases do not, in so many words, express the view which I feel is demanded in the interest of justice in this type proceeding, it is implicit in their holding. See *Lester v. Elliott Bros. Trucking Co., supra,* where this court affirmed, *per curiam,* the Appellate Division opinion which asserted the substantial evidence rule. Manifestly, a judgment which is based upon substantial evidence on the whole record, would not be palpably erroneous.

So it seems to me that where there are concurrent results in these cases, the Appellate Division should refrain from independent findings unless the substantial evidence test is

not met. And with respect to the intrusion of this court, if the case is purely factual and that test is satisfied, there should be no certification at all, if we have proper regard for our function as intended by the *Constitution, Article* VI, *Sec.* V, *par.* 1; and as defined by our rules, *R. R.* 1:2–1. But if certification is granted for any reason, then our consideration of the matter should be circumscribed as described herein. And even where the case is here as of right because of a dissent in the Appellate Division, it has been indicated that the rule should not be otherwise. *Midler v. Heinowilz, supra,* 10 *N. J.* at *page* 129.

A more difficult problem now presents itself. What should be the nature of the appeal in the Appellate Division when there are discordant findings in the Division and the County Court? Should there be an independent review of the facts as of course? The problem has disturbed the Division for some time. It has been said that in such situations the County Court judgment is entitled to "determinative" weight, *Donofrio v. Haag Brothers, Inc.,* 10 *N. J. Super.* 258 (*App. Div.* 1950); to "great weight," *Augustin v. Bank Building and Equipment Corp.,* 44 *N. J. Super.* 242 (*App. Div.* 1957); will not be disturbed unless a study of the record indicates that the interests of justice plainly call for it, *Mewes v. Union Bldg. & Construction Co.,* 45 *N. J. Super.* 88 (*App. Div.* 1957), certif. den. 24 *N. J.* 546 (1957).

The situation is somewhat akin to that dealt with by the former Supreme Court and affirmed *per curiam* by the Court of Errors and Appeals in *Delaware, L. & W. R. Co. v. State Board of Taxes and Assessments,* 1 *N. J. Misc.* 596 (*Sup. Ct.* 1923), affirmed *sub nom. Pennsylvania R. R. Co. v. Jersey City,* 98 *N. J. L.* 283 (*E. & A.* 1922), where it was said that:

"* * * [v]aluations ordered by a unanimous board should not be set aside, unless it is entirely clear that the evidence will not fairly support them, and valuations by a divided board should be determined according to circumstances." (At *page* 285)

Regardless of *R. R.* 1:5–4(*b*) which requires an appellate tribunal, in considering a factual issue, to give due regard

to the opportunity of the trial court to judge of the credibility of the witnesses, it has always been a guiding principle of appellate review that the finding of the trier of the facts, whether court or administrative agency, will be accorded significant influence. *Gilbert v. Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533, 538 (*Sup. Ct.* 1939); *Goldmann v. Johanna Farms, Inc.,* 26 *N. J. Super.* 550 (*Cty. Ct.* 1953); *Yutterman v. Sternberg,* 86 *F. 2d* 321, 111 *A. L. R.* 736 (8 *Cir.* 1936). On the other hand, the design of the *de novo* review in the County Court is to bring a new judicial mind to the evaluation of the proof, *Gaeta v. Scott Paper Co.,* 14 *N. J. Super.* 261 (*App. Div.* 1951), and of course the emanation of that mind must have some force when the intervention of the Appellate Division is sought. The unusual nature of the additional appellate step in the County Court, which existed originally by virtue of the legislative prescription and now by *R. R.* 5 :2–5, renders difficult the formulation of a standard to regulate the scope of the review in the Appellate Division when the other two tribunals have disagreed as to the proper factual conclusion. It seems reasonable to expect that in the ordinary case of that kind, an independent study and weighing of the evidence would be engaged in. *Cf. Reynolds v. Public Service Coordinated Transport,* 21 *N. J. Super.* 528, 530 (*App. Div.* 1952), certif. den. 11 *N. J.* 214 (1953). However, no hard and fast mandate should be laid down. Decision as to the nature of the review to be pursued in the particular case should be permitted to rest where the broad terms of *R. R.* 1 :5–4(*b*) and *R. R.* 4 :88–13 seem to leave it, that is, as a permissive and discretionary matter in the hands of the Appellate Division.

In the case now before us there was a finding by the Deputy Director on conflicting proofs that the employment accident accelerated the course of the breast cancer. That finding was concurred in by the County Court after a *de novo* study of the controversy. The Appellate Division, after an exhaustive analysis, declared that there was substantial evidence in the record to support those views. How-

ever, it indicated that if it functioned as a trial court and substituted its judgment for that of the Deputy Director and the County Court, a conclusion would probably be reached that the evidence preponderated against the right to compensation. But it said, and rightly I think, that because substantial evidence in favor of the claim was present, "the interests of justice do not call for a reversal * * *." I agree that when evidence of the probative import mentioned was found to exist, the judicial function had exhausted itself.

Under the circumstances I vote to affirm the judgment. Mr. Justice JACOBS joins in this dissent.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING and PROCTOR—4.

*For affirmance*—Justices JACOBS and FRANCIS—2.